PEOPLE *v.* RYDER.[1]

1. CRIMINAL LAW — EVIDENCE — ADMISSIBILITY — OVERTURES FOR SETTLEMENT—HARMLESS ERROR.

> After the complaining witness in a criminal case had been asked on cross-examination if he had not offered to settle with defendant's wife, he testified on redirect that defendant's wife and another person both came to him with offers which he rejected. Defendant claimed on error that it was conclusively proved that neither of these persons had any authority from him to settle. *Held,* that the statement on redirect as to defendant's wife was justified by the cross-examination and that in view of the conclusive proof of lack of authority from defendant the statement as to the overtures of the other person was harmless.

2. SAME — CHARACTER WITNESSES — TRAIT OF CHARACTER UNDER INVESTIGATION.

> In a prosecution for larceny it is proper to ask a character witness as to defendant's reputation as an "honest" and law-abiding citizen, honesty being the trait of character involved in the crime charged.

3. SAME—HARMLESS ERROR.

> Where a character witness knows nothing of the defendant's reputation in the community where he lives, his testimony is valueless, and an error in excluding a proper question put to him is harmless.

4. SAME—QUESTIONS ADMISSIBLE.

> A character witness who has testified that a witness' reputation for truth and veracity is bad may be asked if he would believe him under oath.

5. SAME—HARMLESS ERROR.

> Where defendant produced witnesses who testified that the reputation for truth and veracity of a witness for the people was bad, the fact that the court erroneously excluded a further question whether the witness would believe said witness under oath will not cause reversal in a case where the proof of guilt is clear and it is apparent that the rejection of the question was not prejudicial.

[1] Rehearing denied March 17, 1908.

Error to Van Buren; Des Voignes, J. Submitted November 14, 1907. (Docket No. 25.) Decided February 15, 1908.

Roe T. Ryder was convicted of larceny, and sentenced to imprisonment for not less than one nor more than five years in the house of correction at Ionia. Affirmed.

*L. J. Lewis*, for appellant.

*Russell M. Chase*, Prosecuting Attorney, for the people.

Defendant was convicted of the larceny of certain hides, of the value of $35, from the slaughter house of one L. Q. Ocobock and charged to be the property of said Ocobock. The case as presented by the people is as follows: One Baugher and defendant, who were neighbors, drove with a horse and buggy to the slaughter house of Ocobock in the early part of the night of November 30, 1906; defendant sat in the buggy holding the horse while Baugher went in and brought out the hides. They took them, drove to defendant's house, harnessed the horses of the two to the buggy and drove to Dowagiac, arriving there at 7 o'clock the next morning. They took the hides and offered them for sale to one Max Franklin. Mr. Franklin, for reasons which we need not state, suspected that the hides had been stolen, and charged defendant with the theft. Franklin testified that defendant admitted that he had stolen them. Franklin immediately notified an officer and the two were arrested. When arraigned Baugher pleaded guilty, and is serving a term of imprisonment in the reformatory at Ionia.

GRANT, J. (*after stating the facts*). Counsel for defendant has 41 assignments of error. The most of them are too frivolous to require notice.

1. The first assignment worthy of attention relates to the admission of certain evidence. Upon the cross-examination of Mr. Ocobock, counsel for defendant sought

strenuously to obtain an admission from him that he had .
tried to settle the case by obtaining from defendant cer-
tain sums of money, and asked about certain conversations
the attorney appeared to claim he (Ocobock) had had
with certain parties. On redirect examination the prose-
cutor asked the witness to relate what conversations if
any he had had about a settlement. The witness testi-
fied that he met defendant's wife and she wanted to know
how she could settle it, and that one Shively on another
occasion came to him and offered him $250 to settle it.
There was nothing in the evidence to show that defend-
ant had sent either his wife or Shively to Ocobock to at-
tempt to make a settlement. The circuit judge admitted
the testimony upon the theory that the defendant had
opened the door to all conversations had with Ocobock
about a settlement by his own inquiry upon the cross-ex-
amination. Counsel for defendant had elicited from Oco-
bock a statement that he (Ocobock) had a conversation
with the defendant's wife and mother about a set-
tlement. This opened the door to a statement from
the witness detailing the conversation and how it oc-
curred. Counsel says in his brief that it was conclusively
proven that defendant did not send Shively to Ocobock.
We may credit the jury with some good sense, and it is
reasonable to assume that they were not prejudiced by
Shively's statement, when it was conclusively shown that
he had no authority to speak for defendant. If it were
error to admit the testimony it was error without preju-
dice.

2. One Hall was asked what defendant's "general
reputation is in the community where he resided for being
an honest and law-abiding citizen." The prosecutor ob-
jected to the use of the word "honest" and the court sus-
tained the objection. Thereupon the counsel for the de-
fendant changed the question to an inquiry as to his repu-
tation for being a peaceable and law-abiding citizen. To
this the witness, who lived in Lawton, replied:

"Well, where; right here in Lawton, or where he lived?

" *Q*. Right there, in that vicinity.

"*A*. In Lawton, as far as I know, it was all right. It was good. I never heard anything against him."

On cross-examination he testified that he knew nothing at all about his reputation over in the neighborhood where he lived.

In a prosecution for larceny it is competent to inquire into the defendant's reputation for honesty in the community or neighborhood where he resides. The inquiry in each case should relate to the trait of character involved in the crime charged. 3 Greenleaf on Evidence (16th Ed.), § 25; *Edgington* v. *United States*, 164 U. S. 361. But the fact that the witness knew nothing of his reputation in the community where he lived rendered the testimony of the witness valueless, and the ruling of the court was error without prejudice.

3. Some witnesses, who testified that the reputation of Baugher for truth and veracity was bad, were asked if they would believe him under oath, but the court excluded the testimony. It was admissible. *Hamilton* v. *People*, 29 Mich. 173; *Keator* v. *People*, 32 Mich. 484. Justice CAMPBELL exhaustively treated this question in the 29th Michigan, at page 184, and cites English and American authorities. The question there arose upon cross-examination. In *Keator* v. *People* the question arose upon direct examination, and the court held the inquiry competent.

The exclusion of this testimony would, as a rule, be prejudicial error. Where it clearly appears that the testimony offered and excluded or admitted could not have prejudiced the jury, appellate courts ought not to reverse the judgment. The essential facts in this case are undisputed. Defendant and Baugher, under cover of darkness, drove to the slaughter house from the home of Baugher; after getting the hides they drove to defendant's house, and then drove all night to a distant market

to dispose of them. The sole defense in this case is that the defendant went at the request of Baugher, under the belief that they were Baugher's hides, and that he went to Dowagiac with him to assist him in disposing of them. Baugher was a self-confessed criminal and was brought from prison to testify. He testified that he was so intoxicated that he did not remember anything that occurred, and on cross-examination he testified that he, had made no arrangements with the defendant. Under Baugher's own testimony, and under the facts as to his character and habits and the undisputed testimony that his reputation for truth and veracity in his neighborhood was bad, we do not think that the respondent was prejudiced by the exclusion of this testimony.

4. Counsel preferred 28 requests, and has assigned error upon the refusal to give 15 of them. In so far as they were essential they were covered by the charge of the court. The principles involved are well understood and no benefit would be served by a statement of them. Counsel also assign several errors on the charge of the court. When the charge is read as a whole we find nothing in it which can be construed as prejudicial error.

Conviction affirmed.

BLAIR, CARPENTER, and McALVAY, JJ., concurred.
MOORE, J., concurred in the result.