## Emler v. Fox, et al.

(Decided November 21, 1916.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Number Three).

1. Malicious Prosecution—Malice—Want of Probable Cause.—In a suit to recover damages for malicious prosecution, the burden is on the plaintiff to show both. malice and want of probable cause, and neither of these essentials is shown by establishing only an acquittal of the charge preferred against the plaintiff.

2. Malicious Prosecution—Want of Probable Cause—Admissibility of Evidence.—In such case it is competent for the defendant to show any fact establishing probable cause for the institution of the prosecution against plaintiff, or looking to a denial of the latter's necessary allegation that the criminal action was without probable cause. This includes the obtaining of the advice of counsel upon a full, free and fair statement to an unprejudiced attorney. of the facts which defendant knew, or, by reasonable efforts, could have known; and such evidence as to advice of counsel may be introduced under a general denial without being specially pleaded in the answer.

3. Malicious Prosecution—Probable Cause—Instruction.—When the facts relied upon to constitute probable cause are disputed, the question of the existence or non-existence of probable cause should be submitted to the jury under appropriate instructions. But when such facts are undisputed, it becomes a question of law as to whether probable cause has been shown, and if, according to the opinion of the court, it has been shown, it is the duty of the court to instruct the jury to find for the defendant.

4.  Malicious Prosecution—Advice of Counsel.—The interest of the
    consulted attorney which would deprive his advice of the effect
    of constituting a defense must be something more than a mere
    political interest.

BENNETT H. YOUNG, ROBERT HAGAN, SAM TATE, CLEM
HUGGINS and E. H. NEUMAN for appellants.

BURWELL K. MARSHALL, ROBERT H. LUCAS, CHARLES T.
GARDNER and BURTON VANCE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This is a suit by appellant, A. M. Emler, against the appellees, H. I. Fox and S. J. Nathan, wherein the plaintiff seeks to recover damages of the defendants for an alleged malicious prosecution which they instituted against him before a justice of the peace for Jefferson County. At the time the plaintiff was sheriff of that county, and by virtue of his office was chairman of the county board of election commissioners. The defendant Nathan had been appointed, on October 29, 1913, a Republican election officer for one of the voting precincts of the city of Louisville for the election to be held on November 4, following. The charge for which the plaintiff was arrested, and which he claims was instituted maliciously and without probable cause, was that he wilfully and knowingly violated the provisions of subsection 3, section 1596a of the Kentucky Statutes by failing to notify the defendant, Nathan, of his appointment as such election officer. The duties imposed by the law upon the sheriff are stated in the subsection referred to, but the penalty for wilfully and knowingly violating those duties is fixed by subsection 15 of the section referred to.

Separate answers were filed by the defendants, in each of which there was a traverse of the allegations of the petition, and a paragraph affirmatively alleging that there existed probable cause to believe the plaintiff guilty at the time of the issuing of the warrant against him, and another paragraph alleging the guilt of the plaintiff; in still another paragraph of the answer of the defendant, Nathan, he relied on the advice of counsel obtained, as allowed by the various opinions of this court on the subject, as constituting probable cause for his action in the matter. These various affirmative pleas

were denied, and upon trial there was a verdict for the defendants, to reverse which this appeal is prosecuted.

Many contentions and counter-contentions are pressed upon us by each side to the controversy, chief among which relate to the instructions given and refused upon the trial, and evidence admitted and rejected by the court during the trial; but under the view which we take of the case as presented, we do not deem it nec-- essary to discuss these matters, nor would it serve a useful purpose to undertake to state in detail the facts out of which the prosecution grew, as they are so varied and complicated that a recitation of them would carry this opinion beyond due and appropriate bounds.

It will be seen that subsection 3 of the section of the statute referred to requires the sheriff to give to the officers of election written notice of their appointment before the day of the election at which they are expected to serve. Subsection 15 of the section imposes a penalty for the sheriff to wilfully and knowingly refuse to do this. As chairman of the board of election commissioners it is his duty to preside at the meetings of the board and to verify its proceedings by his signature as such chairman, a part of which proceedings necessarily includes the appointment of election officers; the notification which he is to give to such election officers constitutes their credentials entitling them to serve as such. As stated, Nathan was appointed on the 29th of October, of which fact he became informed the next day, either through the public press or otherwise, and, failing to receive official notification thereof, on Monday morning following he went to the sheriff's office, and, as he claims, was informed by that officer that his notification and credentials had been mailed to him. Some statement was made by him in regard to it, but later in the afternoon of that same day he again went to the sheriff's office, but found him absent. He remained at the office of the sheriff until one o'clock that night, which was Tuesday morning, without obtaining his credentials or official notification. The evidence shows that there were numbers of others who had been appointed and had failed to be notified. as Nathan had, and they were at the courthouse on Monday afternoon seeking their credentials, also, but were unable to procure them. About the time Nathan left the courthouse, or perhaps shortly before, a number of the appointed election of-

ficers who had failed to receive their notices instituted injunction proceedings to compel the plaintiff as sheriff to deliver to them their notifications, including their credentials authorizing them to serve as such officers, which injunction was not served on the defendant, however, until some time between seven and eight o'clock next morning, and after the polls had been opened. Nathan never procured his, and, of course, did not serve.

It is but just to the plaintiff to say that his evidence shows that when these notifications, including that of Nathan, were given him, he delivered them to one of his deputies, and he claims to have gone to the respective places of abode of each appointee but failed to find them. He also states that in leaving his office about three-thirty on Monday afternoon he was compelled to do so in order to discharge some of his duties with reference to the election in places located out of the city and in the county of Jefferson.

While at the courthouse Monday night, Nathan and others made affidavits setting forth the facts substantially as above outlined, and on the 20th day of November, in the office of the co-defendant, Fox, who, is a regular, practicing attorney, he made a similar affidavit. The warrant, however, was not sworn out until some time toward the middle of January, 1914, but both Nathan and Fox had discussed the facts in the presence of each other, and in the presence of W. W. Davis, Burton Vance, Chas. T. Gardner, M. J. Holt, Robert H. Lucas, and perhaps other attorneys of the Louisville bar. The evidence convinces us that these attorneys were unanimously of the opinion that the statute had been violated, and that the plaintiff was guilty of the offense with which he was charged.

There is nothing to show any want of reasonable diligence on the part of either Fox or Nathan to obtain the facts, nor do we find any evidences of any concealment from the attorneys of any of the facts known to them, so that we unhesitatingly conclude that the defendants brought themselves within the rule so often announced by this court permitting them to justify their actions in instituting the prosecution under the advice of counsel honestly obtained.

This court has uniformly held that if a defendant in a suit of this kind could show that, before he procured

the order of arrest of the plaintiff, he laid the facts before a competent attorney and fairly obtained his advice that the defendant in the prosecution was guilty, this would constitute probable cause for instituting the prosecution, and, consequently, a defense to an action to recover damages therefor. Among the numerous cases from this court are: Lancaster v. Langston, 18 Ky. Law Rep. 299; Mesker v. McCourt, 19 Ky. Law Rep. 1897; Ahrens and Ott Mfg. Co. v. Hoeher, 21 Ky. Law Rep. 299; Farmers' and Shippers' Tobacco Warehouse Company v. Gibbons, Idem. 1348; Mark and Muse v. Christian, 22 Ky. Law Rep. 1102; Tandy v. Riley, 26 Ky. Law Rep. 98; Miller v. Metropolitan Life Insurance Co., 28 Ky. Law Rep. 223; National Life and Accident Insurance Co. v. Gibson, 31 Ky. Law Rep. 101; Schott v. Indiana National Life Insurance Co., 160 Ky. 533; Moser v. Fable, 164 Ky. 517; Dyer v. Singer Sewing Machine Company, Idem. 538, and Carrigan v. Graham, 166 Ky. 333. These, and other cases from this court, hold that the burden of establishing malice and a want of probable cause is upon the plaintiff in a malicious prosecution suit, and that proof of an acquittal of the charge is not of itself sufficient to make a *prima facie* case for the plaintiff, or to cast the burden upon defendant to disprove malice or to show the existence of probable cause for instituting the prosecution. They also establish the rule in this State, and which has been such elsewhere from the earliest history of this character of action, that malice necessary to sustain the action may be presumed from a want of probable cause, but that want of probable cause will never be presumed, although actual malice be indisputably established. Jones v. L. & N. Railway Co., 29 Ky. Law Rep. 945; Yocum v. Polly, 1 B. Monroe, 38; Garrard v. Willett, 4 J. J. Mar. 68. The authorities referred to furthermore hold the rule to be that if the facts relied upon to establish probable cause are disputed, the question of the existence of probable cause should be submitted to the jury, under appropriate instructions, but if such facts are not disputed, it becomes a question for the court, and if the undisputed facts are sufficient to constitute probable cause, as a matter of law it is the duty of the court to direct a verdict for the defendant. Illustrating these rules, we find this court, in the case of Moser v. Fable, *supra,* saying:

"Applying this rule (advice of counsel) to the facts of this case, we find it somewhat difficult to designate what more or different steps the appellant could have taken to justify him in causing appellee's arrest. He not only acted without malice, but, after a full submission of all the facts, he acted upon the advice of three attorneys who were of one opinion. Under this evidence, the court should have sustained defendant's motion for a peremptory instruction."

In the case referred to of Carrigan v. Graham it is said:

"What facts and circumstances amount to probable cause is a question of law. Whether they exist or not in any particular case where the evidence is conflicting, is a question of fact to be determined by the jury. But where there is no conflict in the evidence, whether the facts shown amount to probable cause is ordinarily a question of law for the court. . . . . In the instant case, the proof shows without contradiction or dispute that the Grahams made a full and fair statement of all the facts to the attorney upon whose advice the prosecution was instituted, and acted upon his advice. Under these circumstances, the trial court properly directed a verdict for the defendant."

We are aware that the rule under consideration requires that the consulted attorney must be a disinterested one, and it is insisted in this case that the attorneys who were consulted are not disinterested ones because they were members of the political party at whose instigation Nathan was appointed election officer, and we are cited to the case of Smith v. Fields, 139 Ky. 60. In that case it will be found that the consulted attorney was financially interested in the litigation out of which the prosecution grew, and, of course, he was very properly held not to be a disinterested adviser. The interest which will disqualify the attorney from giving advice upon which the defendant in this character of suit may rely cannot be extended so as to include merely a political interest. If such an interest on the part of the attorney would disqualify him from giving such advice, in many cases it would be an extremely difficult matter to obtain what would, under such circumstances, be unprejudiced advice, for it is a known fact that members of the bar in this country usually take more than an average interest in politics, and the great majority

of them align themselves with some pronounced political party. In such a case if a member of one political party should be accused of a violation of the law, an attorney of an opposing political party would be disqualified from giving advice to the one considering himself aggrieved, and who desired to institute a prosecution so that the law might be vindicated. The very statement of the proposition is sufficient to refute its soundness. We are convinced that under the facts disclosed the trial court should have sustained the motion of the defendants for a peremptory instruction directing a verdict in their behalf.

But at this point we are met with the argument that so far as the defendant, Fox, is concerned he did not in his answer specially plead the advice of counsel obtained by him as establishing probable cause for the part he took in instituting the prosecution against the plaintiff, and that he cannot therefore rely on it. We are convinced that this objection is not well taken, because such a special plea is not necessary under our form of practice. It must not be forgotten that the advice of counsel obtained in the manner required by law is only for the purpose of combating the necessary allegations which the plaintiff must make in his petition that the prosecution was instituted *without* probable cause. In other words, it is evidence of the existence of probable cause. When the allegations of the petition are traversed, an issue is made as to whether there existed probable cause, and necessarily any fact having a bearing upon this issue one way or the other would be admissible in evidence. This naturally follows from the well-established rules of pleading as found in all of the authorities. Unless, therefore, the practice in this State requires a different rule, or has made an exception of the rule of practice now under consideration, it would be competent for the defendant in a malicious prosecution suit to prove under his traverse the fact that he sought and obtained the advice of counsel as showing that he acted with probable cause. We find no such exception existing in this State, although in a number of cases, including some of those to which we have referred, no doubt out of abundant caution, the advice of counsel was relied upon by a special plea. In none of the cases do we find that it is a requirement under our practice. An answer is defined by section 95 of the Civil

Code of Practice to be: "1. A traverse.    2. A statement of facts which constitute an estoppel against, or avoidance of, a cause of action stated in the petition. 3. A statement of facts which constitute a set-off or counter-claim.    4. A cross-petition."

The advice of counsel is evidently not a statement of facts which constitutes an estoppel against the cause of action stated in the petition, nor is it in avoidance of such a cause of action because it confesses nothing stated in the petition, and there can be no avoidance of a thing which is not confessed, nor is it a set-off, counter-claim · or cross-petition. It would seem, therefore, that the conclusion is irresistible that there exists no rule of pleading requiring this character of defense to be specially relied upon by plea in order to enable the defendant to obtain the benefit of it.    This question was considered by the Supreme Court of Massachusetts, which has a somewhat similar method of pleading to our own, in the case of Folger v. Washburn, 137 Mass. 60.    In that case, upon the precise question, the court said:

"A general denial by the defendant puts in issue all the facts which it is necessary for the plaintiff to prove in order to make out a *prima facie* case.    Evidence on behalf of the defendant, that, in instituting the previous prosecution, he acted in good faith, under the advice of counsel, is competent under a general denial, because it tends to rebut the plaintiff's allegations of malice and want of probable cause.    This is not a substantive fact in avoidance of the action; it does not admit and avoid facts alleged by the plaintiff, but disproves them."

In 26 Cyc. 88, upon the same point, it is said:

"Under the general denial, or general issue, facts showing the existence of probable cause, and the non-existence of malice, the guilt of plaintiff, and all circumstances attending the transactions which tend to show defendant's motive may be offered in evidence."

See, also, Sparling v. Conway, 6 Mo. App. 283; (Same) 75 Mo. 510; Griffin v. Chubb, 58 Am. Dec. 85. The same question was under consideration by the Superior court of this State in the case of Johnson v. Clem, 4th Ky. Law Rep. 860, wherein the court through Judge Bowden gave somewhat an exhaustive consideration to the question now being considered and held that the special plea of the nature under discussion is not neces-

sary to enable the defendant to rely on the advice of counsel. In the course of the opinion the court says:

"When he (defendant) tendered the issue of a traverse he fixed the quality of all the facts relating to that issue, even if it were conceded, which we do not concede, that he might have pleaded the facts, whether they are regarded as only a particular method of denial, or are regarded as in the nature of an avoidance. But there is not in the facts pleaded the first essential condition of an avoidance; it cannot be said that it admits the charge of malice and want of probable cause by not specially denying them, and then avoids the effect of that admission, by facts which are themselves merely a denial of them by inference. If it can be considered as admitting malice and want of probable cause, in order to maintain the paragraph as a supposed plea of avoidance, then the paragraph is good for nothing, because it contains no matter, which can defeat the plaintiff's action, assuming, as the argument does, that the pleadings admit that the prosecution was malicious and without probable cause. That which is admitted by the pleadings is incontrovertible. To hold that it is a plea of confession and avoidance would be to say that not a single fact pleaded could be proved, inasmuch as the supposed confession of malice and want of probable cause preclude any testimony whatever tending to contradict that which is confessed. But one possibility remains; if anything, it is a mere denial, in a form not prescribed by the Code; there being already an issue by a traverse, it is merely a statement of the evidence relevant to that issue."

The same court, speaking through Judge Richards, in the case of Crawford v. Keyser, 5 Ky. Law Rep. 693, upholding the right of the defendant to rely on this defense without a special plea, said:

"Under such a denial the defendant may prove, as a fact tending to show probable cause, that he acted under the advice of a licensed lawyer."

Again, the same court, in the case of Arnold v. Hicks, 5 Ky. Law Rep. 934, upon the same question, said:

"Under this traverse the defendants were entitled to prove as tending to show want of malice and the existence of probable cause that before taking any step they laid before a practicing attorney all the facts in the case, and that he advised them that the facts so

stated were sufficient to justify a criminal proceeding, and the court erred in refusing to allow them to make such proof.''

The same question has been before this court in the case of Farmers' and Shippers' Warehouse Company v. Gibbons, *supra*. In that case there was no special plea relying upon the defense now under consideration. Still, evidence of such defense was not only admitted upon the trial under the defendant's traverse of the allegations of the petition, but this evidence was adjudged by this court to be sufficient to authorize the direction of a verdict for the defendant. It is stated in the opinion in that case:

''The original petition contains two paragraphs. In one it is alleged that the appellant maliciously and without probable cause instituted this suit against him, and maliciously caused an attachment to issue against the property of appellee, etc. . . . . The other paragraph is a proceeding under section 7 of the Kentucky statutes for damages for the suing out and levy of the attachment 'without good cause.' ''

Further along, in showing the defendant's pleading, it is stated:

''The answer as amended is a general denial of each and every averment of the petition.''

In summing up the conclusion of the court on this state of the pleading and the evidence as shown in the record, the court says:

''The testimony shows that appellant honestly sought the advice of its attorney, after taking more than ordinary care to acquaint itself with the facts on which it based its claims for recovery, and, after fully and fairly stating the case, pursued the course recommended by such counsel, and neither malice nor want of probable cause is shown.''

Without discussing the right of Fox to rely upon the special plea of Nathan, under the circumstances of this case, provided the practice required the defense to be made by a special plea, we are convinced from the general principles of pleading, and from the language of the section of the Code, *supra*, and the authorities referred to, that this defense may be introduced under a general denial of the allegations of the petition or, as stated by the Code, a traverse only of that pleading. It therefore results that under the pleading of appellee,

Fox, he had a right to introduce evidence on the question of obtaining advice of counsel and to rely thereon, and the court did not err in permitting him to do so.

As the jury found, under the instructions, for the defendant, which, according to our view, they should have been directed by the court to so find, it results that the judgment is correct, and it should be and is affirmed.