## Foure v. Commonwealth.

(Decided October 14, 1924.)

## Appeal from Rockcastle Circuit Court.

1.  Criminal Law—Homicide—Witness May Testify as to Another's Request that Deceased go Home with Him, but What was Said About a Prior Shooting was Hearsay.—In prosecution for murder, held proper for Commonwealth to prove that person accompanying deceased at time of killing had gone to latter's home and re- quested to go home with him; but.testimony that he said some- one had been shooting at him was mere hearsay.

2.  Criminal Law—Testimony as to Declarations of Witness Held In- admissible as Self-Serving.—In prosecution for murder, testimony with reference to what occurred at home of deceased, when wit- ness went there after there had been shooting in neighborhood, in way of declarations as to who was responsible for the shooting. held inadmissible as self-serving declarations.

3.  Homicide—Widow Could Testify Deceased Took no Weapon with Him When he Left Home.—Widow, surviving deceased, was prop- erly permitted to testify that deceased took no weapon with him. when he left home to go along road where he was killed, a short distance from his home, where there was dispute as to who started shooting.

4.  Homicide—What Wife Did to Establish that Deceased Husband. Had no Pistol Held Not Competent.—Testimony that deceased's wife, when neighbors brought her husband in from road where he had been shot, told them he had no pistol with him, and by turning back mattress of bed showed pistol to them, was inad- missible.

5.  Witnesses—Testimony that Commonwealth's Witness Told Her Boy to "Hush" Held Competent to Contradict Her.—Where de- ceased's wife testified that she told those who brought her hus- band home that he had no pistol with him, and showed his pistol to them, it was competent for defense to contradict her by show- ing that her little boy spoke up and said that deceased had taken the "big pistol," and that she said, "Hush."

6.  Homicide—Competent to Introduce Evidence to Show Motive for- Desire to Kill Person Accompanying Deceased, but Not to go Into Details of Defendant's Misconduct.—It was proper for Common- wealth to introduce sufficient evidence, if it could, that defendant desired to have person accompanying deceased killed, because of his interference in connection with rumors of defendant's atten- tions to a certain woman, but it was improper and prejudicial to go into details, or undertake to establish truth or falsity of the rumors.

7.  Criminal Law—Improper to Permit Witness to Testify that She "Thought" Person in Dark was Certain Person.—It was improper to permit witness to testify that she "thought" that one she saw

at night was certain person, where she admitted that she did not know whether man she saw was old or young, large or small, black or white, or whether he walked without impediment or was lame.

8. Witnesses—Proper to Prove Defendant had been Convicted of Striking Another with Deadly Weapon 23 Years Before.—It was proper for Commonwealth to prove that defendant, more than 23 years before, had been convicted of maliciously striking another with deadly weapon, and was sentenced to penitentiary, as tending to affect his credibility as witness.

9. Witnesses—Repetition in Substance of Questions Held Prejudicial Error.—Where court sustained objection to question whether defendant had been in the asylum, it was prejudicial error for Commonwealth to further ask defendant if he did not pretend insanity after prior crime, and if he was adjudged insane and sent to asylum, and whether or not he stated that he pretended insanity and fooled jury.

10. Witnesses—Question as to How Many Times Defendant had been in Court Improper.—Court erred in not sustaining objection to question asked defendant as to how many times in his life he had been in court.

11. Witnesses—Improper and Prejudicial to Ask Accused How Many Times he had been charged with Selling Liquor.—It was improper and prejudicial for Commonwealth's attorney to ask accused how many times he had been charged with liquor selling, though court sustained objection.

12. Witnesses—Improper to Ask Defendant's Witness if he had Not Stated that he would be Afraid to Testify Against Defendant, and to Contradict his Denial.—It was error and prejudicial to permit Commonwealth to ask defendants' witness if he did not tell a certain person that he would be afraid to testify against defendants, because one of them would have him killed, and on his denial to contradit him; it having no reference to witness' testimony on stand, and not being contradictory of it.

13. Witnesses—Form of Question to Witnesses Testifying to Character of Accused for Morality and Veracity Held Improper.—Question whether witnesses, attacking character of defendant for morality and for truth and veracity, would give him full faith and credit on oath, was improper in form, as question should have been whether or not, in witness' opinion and judgment, defendant was entitled to full faith and credit when on oath.

C. C. WILLIAMS and S. D. LEWIS for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Reversing.

Appellant, Mat Foure, was tried in the Rockcastle circuit court under an indictment charging him with

murder. The jury found him guilty and fixed his punishment at confinement in the penitentiary for life. Judgment of the court was duly entered and he prosecutes this appeal. This appellant is one of four defendants jointly indicted for the murder of Chester Mullins. The appeal of another of the defendants has heretofore been considered by this court in Gillis v. Commonwealth, reported in 202 Ky. 827. The facts introduced in evidence upon the trial of the two cases are substantially the same and they may be had by reference to the Gillis case. In this opinion we shall confine ourselves to only such of the facts as affect the questions being considered.

When the difficulty arose that resulted in a number of shots being fired, some of which struck and killed Chester Mullins, it appears that appellant, who was the police judge of Livingston, Kentucky, and who was and had been totally blind for eighteen years, was in company with W. F. Gillis, the marshal of that town, and James Roberts, and that Mullins, who was killed, was in company with John Poynter. The meeting of the parties occurred on one of the streets of that town and in the nighttime. Shots were fired from both sides, the evidence being conflicting as to the number of persons on either side who took part in the shooting. Poynter, testifying for the Commonwealth, stated that Gillis began the difficulty by shooting at him. Appellant Foure and the two above named who were with him stated that the difficulty began by either Poynter or Mullins first shooting at appellant Foure. About thirty minutes before the difficulty in which Mullins was killed some one fired several shots in the vicinity of the place where the killing later occurred. Each side charges the other with having fired those shots. Between the time the first shots were fired and that when the second shots were fired the Commonwealth's witness, Poynter, went to the home of Mullins, who later was killed. The surviving widow of the deceased, while testifying for the Commonwealth, was permitted to testify over the objection and exception of appellant that when Poynter came to her home at that time he told her husband that somebody had been shooting at him and that he wanted Mullins to go home with him because he was afraid to go by himself. It was proper for the Commonwealth to prove that Poynter went to the home of Mullins and requested him to go home with him, but it was erroneous to permit the witness to testify as to what Poynter said to Mullins about the shooting that had occurred shortly before then. That

evidence was incompetent for two reasons. First, coming from Mrs. Mullins it was mere hearsay, and second, Poynter's statements on that occasion were in the nature of self-serving declarations. The same rule should apply to the testimony of the witness Poynter with reference to what occurred at the home of Chester Mullins when he went there after the first shooting had occurred, because anything he may have said to Mullins on that occasion in the way of making testimony for himself as to who was responsible for the shooting that had occurred were but self-serving declarations.

While testifying for the Commonwealth, the surviving widow of the deceased stated that her husband took no weapon with him when he left home to go with Poynter. That clearly was competent. Mullins was killed within a short distance of his home. He was carried back to his home by some of his neighbors immediately after the shooting. He lived some half to three-quarters of an hour after reaching home. To further strengthen her testimony that her husband had no weapon with him that night, Mrs. Mullins testified that when the neighbors brought her husband in she told them that he had no pistol with him that night, and called their attention to the fact that his pistol was at home by turning back the mattress of the bed and showing it to them. This testimony was not objected to. What she said and did to establish that her husband had no pistol on the occasion in question was not competent but was admitted without objection or exception. The defendant offered to contradict her and to show her bias as a witness in the following way: She was asked on cross-examination if, at the time she stated to those who brought her husband home after the shooting that he did not have his pistol and pointed out to them the pistol under the mattress, her little boy, Tom, didn't speak up and say, ''Chester took the big pistol,'' and if she didn't then say to the boy, ''hush.'' We hold that as Mrs. Mullins had testified as she did about telling those who brought her husband home that he had no pistol and about showing the pistol to them, it was competent to contradict her in the manner offered by the defense. Upon another trial none of that testimony should be admitted.

Poynter, the Commonwealth's witness, who, with Mullins, was engaged on one side in the difficulty that resulted in Mullins' death, is the stepson of the appellant Foure. It appears from the record that some domestic trouble arose in the Foure family because of rumors that

had gotten abroad that Foure was paying too much attention to a Mrs. Martin, who lived in the town of Livingston. Poynter resided elsewhere but had returned to Livingston about a week previous to the homicide upon receipt of a letter advising him of that fact. It is the theory of the Commonwealth that appellant desired to have Poynter killed because he interfered in that matter; that the shooting which resulted in Mullins' death was done by the Foure crowd in an attempt to kill Poynter. It was proper for the Commonwealth to introduce sufficient evidence if it could to establish that motive for Foure desiring to have Poynter killed, but upon the trial of appellant upon the charge of having aided and abetted the murder of Chester Mullins it was highly improper and prejudicial to go into the details or undertake to establish the truth or falsity of the rumors that appellant Foure had been guilty of misconduct with the Martin woman. Upon his cross-examination the court below permitted the Commonwealth's attorney to go much further into that question than was proper. Over the objection of the defendant the court permitted the Commonwealth's attorney to ask appellant and required him to answer how many times he had taken the Martin woman out of town or brought her back, and how many times she had been out car-riding with him, and whether or not he had taken her to London, and whether or not while there they registered as husband and wife, and whether or not they stayed in the same hotel and how long they remained in London, and whether or not appellant paid for their dinner and other questions of like import. That testimony was not material to the issue under the charge for which appellant was being tried and was highly prejudicial to him.

The witness, Eliza Westerfield, who testified for the Commonwealth, told of seeing some man near her gate shortly before the shooting occurred from which Mullins was killed. After stating that she did not recognize the man or know who he was and other facts that establish that she did not and could not have known who it was, she was permitted, over the objection of defendant, to testify that she thought it was W. F. Gillis. If the witness knew who it was she saw or some facts or circumstances upon which she could base a judgment as to who it was she should be permitted to testify as to who the man was or who in her judgment it was, but she even went so far on cross-examination as to admit that she did not know

whether the man she saw was old or young, large or small, black or white, or whether he walked without impediment or was lame. In view of those facts it was improper to permit her to testify that she "thought" it was Bill Gillis.

It appears that some twenty-three years prior to the date of the homicide for which appellant and W. F. Gillis and Jim Roberts were indicted charged with murder, appellant Foure was convicted of maliciously striking another with a deadly weapon and sentenced to two years in the penitentiary. Although twenty-three years had elapsed between the two occurrences, it was proper for the Commonwealth to prove the fact that Foure had previously been convicted of a felony as tending to affect his credibility as a witness. The Commonwealth was permitted to ask and the appellant required to answer how long he stayed in prison, and the Commonwealth's attorney then asked the witness this question: "Have you been in the asylum?" The court sustained an objection to this question, and he then asked this further question: "Let me ask you this question, is it not true that while the case was pending against you for which you were later convicted and sent to the pen that you pretended insanity and that by reason of your pretending insanity you were adjudged insane and sent to the asylum?" The court sustained an objection to that question, but the Commonwealth pursued the matter far enough to ask this further question: "Is is not true that after the time you made public the fact that you pretended insanity and fooled the jury?" The court sustained an objection to that question. The three questions were incompetent and it was highly improper after the objection had been sustained as to the first to pursue the matter further, and we feel that we may say under the circumstances the mere asking of the questions in the form in which they were put was prejudicial to the appellant. The Commonwealth's attorney asked appellant Foure this question: "How many times in your life have you been in court?" to which appellant objected and which the court overruled and compelled appellant to answer. That question was improper and the objection should have been sustained. The Commonwealth's attorney, well knowing its incompetency, asked appellant this question: "How many times have you been charged with selling liquor?" The court sustained the objection. The asking of that question was highly improper and under the circumstances of this case we think prejudicial.

George Hays was used as a witness for the appellant. On cross-examination the Commonwealth's attorney, presumably for the purpose of laying grounds for the contradiction of the witness, asked him this question: "At the round house in Livingston in the month of last March, did you have conversation with Milt Owens in which you said to him that you would be afraid to testify against those fellows (meaning Foure, Gillis and Roberts) and especially Gillis, because he would get out and have you killed?" The attorney for appellant objected, the court overruled the objection and permitted the witness to answer, and the witness answered, "No, sir, I did not." The Commonwealth then introduced Owens as a witness, and, in response to the question, based upon the ground laid for contradiction, proved by him that Hays made that statement. It is proper to contradict a witness concerning a matter about which he has testified by proving that he had made other statements about the same matter which contradict his testimony. The statement the witness Owens attributes to the witness Hays has no reference at all to Hays' testimony while on the witness stand and is not contradictory of any of his testimony. It was seized upon by the Commonwealth as an opportunity to attack the character of the defendants in an improper manner. That evidence was highly prejudicial to the appellant.

Several witnesses were introduced by the Commonwealth to attack the character of appellant for morality and for truth and veracity. The attorney for the Commonwealth would then ask each witness in substance this question: "From his reputation in these particulars, state whether you would or could give him full faith and credit on oath?" We think the form of the question is subject to criticism. It is not a question as to whether or not the witness could or would give the party whose character has been attacked faith and credit on oath. The proper form of the question is: "From his general reputation for morals and for truth and veracity, state whether or not in your opinion and judgment he is entitled to full faith and credit when on oath?"

With reference to the instructions given upon the trial of the case below, we do not find any serious error, and, upon another trial, so far as applicable, the court will be governed by the opinion rendered in Gillis v. Commonwealth, *supra,* with reference to the instructions.

Appellant contends that the verdict of the jury is not sustained by sufficient evidence and is flagrantly against the evidence. In view of the fact that the judgment must be reversed for the reasons hereinbefore indicated, we will not pass upon that question, but reserve it.

The judgment is reversed and this cause remanded for further proceedings consistent herewith.