## Bowles v. Katzman.

November 12, 1948.

Woodward, Dawson, Hobson & Fulton for appellant.

Henry V. B. Denzer for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—
Reversing.

Appellee, Robert Katzman, had been employed by Chester F. Bowles in various capacities for a number of years, the employment terminating in September or October of 1945. In September 1946, Katzman and Bowles entered into an agreement whereby Bowles was to furnish the money and Katzman was to purchase lumber in the mountains and truck same to Louisville for sale. To accomplish this purpose Bowles furnished Katzman blank checks over his signature. Since Katzman did not know in advance from whom he would purchase lumber nor what the exact purchase price would be, he would take these checks and upon purchase of the lumber would fill in the name of the payee and the amount of the purchase price. Upon return to Louisville he would notify Bowles of the amount of the check, and Bowles would then fill out the stub of the check. Within the months of October and November a number of such checks were used by Katzman in the manner above described, and upon the first of each fol-

lowing month the bank statement of Bowles account showed no discrepancy whatever between the amount of the checks and the amount reported by Katzman to Bowles.

The acts out of which this litigation arose occurred during the month of December 1946. On December 4, 1946, Katzman purchased lumber at the price of $392.42 from A. C. Meadows of Williamsburg, Kentucky. However, instead of filling out the check in that sum, he entered the amount of $401 and received from Meadows $8.58 in cash. Upon his return Katzman reported to Bowles that the amount of the check was $392.42, and Bowles so stubbed his check.

On December 11th Katzman again purchased lumber from A. C. Meadows, the lumber costing $364.40. Instead of entering that sum in the check, Katzman filled in the amount of $456, receiving from Meadows the difference of $91.60 in cash. Upon his return Katzman reported to Bowles lumber purchased in the sum of $364.40, which sum was likewise entered on Bowles' check stub.

Since the bank statement for the month of December would not be made out until January 1, 1947, Bowles knew nothing of these discrepancies.

On December 23rd Bowles again obliged Katzman by furnishing a blank check to go to the mountains to purchase lumber. Instead of so doing Katzman went to the business place of Ben Hausman, a truck salesman and repairman in Louisville. He filled in the check of December 23rd in the sum of $400 and made it payable to himself. It appears that Katzman owed Hausman $100 for repairs to his truck. Hausman, after deducting $100 owing him by Katzman, gave Katzman the difference, or $300.

. On January 1, 1947, Bowles received his bank statement. The statement showed the discrepancies above and that Katzman had realized on those two checks approximately $100, for which he had failed to account. The statement did not show the situation as to the $400 check as it had not been presented for payment, due to the fact that Katzman had failed to endorse the check to Hausman.

About the middle of January, having failed to con-

tact Katzman to get his endorsement on the check so it could be presented for payment, Hausman called appellant, Bowles, to inquire of the whereabouts of Katzman. In the conversation Hausman mentioned the $400 check. Bowles promptly advised Hausman he knew nothing of such a check. For reasons best known to Katzman he had failed to report to Bowles after the issuance of this last check, although theretofore he had made immediate and prompt reports. Bowles made effort to contact Katzman and sometime about the 10th or 12th of January, having been informed that Katzman had been seen coming into Jeffersontown, Bowles went to his home where Katzman promised to come to Bowles' office the following morning to make an accounting. Instead Katzman immediately left the community.

On January 22nd Bowles again received information that Katzman had returned to Jeffersontown. Bowles and a man named Roark, who had rented a truck trailer to Katzman, proceeded to Katzman's home for the purpose of interrogating him about his conduct. Katzman refused to leave his home to talk with either Bowles or Roark. They then sought the assistance of the County Police. Patrolmen Humm and Moody went to Katzman's home and asked Katzman to come out and talk with Bowles and Roark. Katzman refused unless the officers presented a warrant. Whereupon, Bowles was advised by the officers that nothing could be done without a warrant. Bowles then proceeded to the Courthouse in Louisville where he told the night clerk the facts substantially as stated above, using the expression a number of times that Katzman had "raised checks on him." Upon that information the clerk filled out a warrant and a supporting affidavit, which was signed by Bowles, reciting that the charge against Katzman was uttering a worthless check. Bowles returned to the policemen with the warrant. Katzman was arrested and taken to jail where he remained until the following morning when he was released on bond. The charge was subsequently dismissed on Katzman's motion.

Katzman then instituted this action against Bowles for malicious prosecution. The trial of the cause resulted in verdict in favor of the plaintiff in the sum of $550, from which this appeal is prosecuted.

Appellant presents here 4 grounds of reversal: (1) The court committed prejudicial error in excluding testimony bearing directly on the question of malice, when it refused to permit plaintiff to be examined about two instances of conversion of the defendant's property immediately preceding the arrest. (2) There was no evidence that the defendant acted maliciously in procuring the plaintiff's arrest. (3) The court committed prejudicial error in refusing to permit the defendant to show that the plaintiff was not entitled to be believed under oath. (4) The damages awarded by the jury were excessive, so that at first blush it should strike the court as being indicative of passion and prejudice.

Under (1) above plaintiff was asked on cross-examination concerning the checks given to A. C. Meadows, about which he had made false representations to the defendant. Objection was made to these questions and the court sustained the objection. Counsel for defendant took the position that this questioning was only for the purpose of showing absence of malice on the part of the defendant. It will be noted that there was only an objection to the questions and no claim of any constitutional immunity in that the answer to such questions would be incriminating. Since the purpose of the questions was to bear directly on the question of malice, we think the evidence to have been competent and the plaintiff should have been required to answer. See Peel v. Bramlett, 298 Ky. 20, 181 S. W. 2d 448, and O'Daniel et al. v. Smith, 139 Ky. 662, 66 S. W. 284.

Appellant next contends that there was no evidence that the defendant acted maliciously in procuring the plaintiff's arrest. Malice is an essential element of a cause of action for malicious prosecution. Its existence is a question of fact for the jury, and may be inferred from proof or want of probable cause. Harper v. Howton, 194 Ky. 840, 241 S. W. 329; Emler v. Fox, 172 Ky. 290, 189 S. W. 469; W. T. Grant Co. v. Taylor, 223 Ky. 812, 4 S. W. 2d 741; and Mosier v. McFarland, 269 Ky. 214, 106 S. W. 2d 641. The record fails to disclose any affirmative proof of probative value that the defendant acted maliciously.

This leaves then the question of probable cause. The court instructed the jury that the defendant did not

have probable cause for procuring the arrest of the plaintiff for the offense of uttering a worthless check. Want of probable cause is also an essential element of an action for malicious prosecution. In the ordinarily accepted and technical sense the plaintiff did not utter a worthless check. Certainly it was not worthless as between Hausman, who cashed the check, and Katzman, but actually, as between Bowles and Katzman, it was a worthless check. From the record it appears that the night clerk, after hearing the statements of Bowles, assumed the responsibility of determining the nature of the offense, and clearly, from the statement of Bowles, Katzman had committed an offense for which he could have been arrested. It all arose out of, and was based upon, the blank check given to Katzman for the purpose of purchasing lumber, instead of which Katzman filled in his own name as payee for $400 and received the money and benefits personally without any authority or right so to do. If the accused was guilty of doing that particular thing, he had no legal ground of complaint merely because the night clerk mistakenly issued the warrant for uttering a worthless check. It cannot be denied that under this state of facts there was sufficient reason for obtaining a warrant, and the subsequent arrest. It cannot at all be said that the plaintiff was totally free from any charge growing out of the issuance of the check involved herein.

In Christopher v. Henry, 284 Ky. 127, 143 S. W. 2d 1069, 1073, we said: "* * * a defendant is exempt from liability for damages to plaintiff in a malicious prosecution action if the facts upon which he acted in his participation in the prosecution of plaintiff were such as to induce a reasonably prudent man to believe that the plaintiff was guilty as charged."

Under (3) above appellant contends that the court erred in refusing to permit defendant to show that plaintiff was not entitled to full faith and credit under oath. After the witnesses had testified that plaintiff's reputation was bad, the following question was asked: "I will now ask you to state whether or not in your opinion, from your association with Katzman, and from what you know about his reputation in the community for truth and morality, you believe him to be entitled to credit under oath."

496

The form of question approved by this court in Foure v. Commonwealth, 205 Ky. 62, 265 S. W. 443, 446; Shell v. Commonwealth, 245 Ky. 223, 53 S. W. 2d 524, and Marcum v. Commonwealth, 282 Ky. 799, 140 S. W. 2d 387, is: "From his general reputation for morals and for truth and veracity, state whether or not in your opinion and judgment he is entitled to full faith and credit when on oath." The form of the question as propounded in the case at bar conforms in all essential particulars to the approved one above. The court should have overruled the objection to the question.

It becomes unnecessary to discuss at any length ground (4) other than to say under the evidence herein anything more than nominal damages would have been excessive.

Wherefore, the judgment is reversed for proceedings consistent herewith.