**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Johnny WALKER, Defendant-Appellant.**

**No. 15034.**

United States Court of Appeals
Sixth Circuit.

Feb. 4, 1963.

Frank J. Longano, Cincinnati, Ohio, for appellant.

Thomas A. Luken, Cincinnati, Ohio, Joseph P. Kinneary, U. S. Atty., Arnold Morelli, Asst. U. S. Atty., Cincinnati, Ohio, on brief, for appellee.

Before CECIL, Chief Judge, and MILLER and O'SULLIVAN, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

The defendant, Johnny Walker, was found guilty by a jury under each of four counts of an indictment charging the transportation in interstate commerce with fraudulent intent of a falsely made security, in violation of Section 2314, Title 18 United States Code. He received a sentence of five years on each count, the sentences to run concurrently. This appeal followed.

The defendant testified in his own behalf denying his involvement. No other witness was called by him. After the defendant rested his case the Government called as rebuttal witnesses a Police Sergeant and an Assistant Police Chief of the Cincinnati Police Department. Each of these witnesses was asked in turn if he had the means of knowing what the defendant's general reputation was for truth and veracity, and after answering in the affirmative, stated, over objection of the defendant, that it was bad. Defendant contends that it was prejudicial error to admit this testimony in evidence.

There is no dispute between the parties that a defendant in a criminal case has the constitutional right under the Fifth Amendment to decline to be a witness against himself and, accordingly, can elect not to testify with-

out it creating any presumption against him. If a defendant elects not to testify in his own behalf his character or reputation for truth and veracity cannot be attacked by the Government. The parties differ as to what evidence can be offered by the Government when the defendant takes the witness stand and testifies in his own behalf, as in the present case. The defendant contends that under such circumstances the Government is limited to cross-examination of the defendant and to proof of his prior conviction of a felony or of an offense involving moral turpitude, directed to the purpose of impeaching his credibility only. Henderson v. United States, 202 F.2d 400, 405–406, C.A.6th, rehearing denied, 204 F.2d 126, C.A.6th. The Government contends that when a defendant testifies in his own behalf his credibility as a witness can be attacked, not only by proof of a prior conviction of a felony, but also by the introduction of testimony that his general reputation for truth and veracity is bad.

■ It is well settled law that in a criminal case the defendant's general character cannot be attacked by the Government unless evidence as to his good character is first introduced by the defendant. Accordingly, if the defendant calls character witnesses who testify to his good character in general, the Government can meet this evidence by the introduction of witnesses who contradict such testimony, but, in the absence of such character witnesses introduced by the defendant, the Government is not entitled to introduce testimony concerning the defendant's bad character. Michelson v. United States, 335 U.S. 469, 475–479, 69 S.Ct. 213, 93 L.Ed. 168. In the present case the defendant introduced no character witnesses in his own behalf. It is his contention that the Government was accordingly not permitted to attack his character by the rebuttal testimony of the two Cincinnati police officers.

We believe, however, that the issue involves more than the application of the well settled rule above referred to and that a distinction must be drawn between (1) a defendant's general character, such as his reputation in the community wherein he lives for honesty, probity, and being a law-abiding citizen, and (2) his reputation in the community wherein he lives for truth and veracity. Although the rule above referred to is applicable when the defendant's general character is involved, we believe it is not applicable when the defendant makes himself a witness, and thus makes his reputation for truth and veracity, rather than his character in general, a matter for the jury to consider in determining his credibility as a witness.

■ It is well settled that although a defendant in a criminal case has the constitutional right under the Fifth Amendment to decline to be a witness against himself and, accordingly, can elect not to testify without it creating any presumption against him, yet this immunity may be waived by the defendant in offering himself as a witness. Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054; Banning v. United States, 130 F.2d 330, 337, C.A. 6th, cert. denied, 317 U.S. 695, 63 S.Ct. 434, 87 L.Ed. 556; Henderson v. United States, supra, 202 F.2d 400, 405, C. A.6th, rehearing denied, 204 F.2d 126, C.A.6th. As said in Raffel v. United States, supra, "When he takes the stand in his own behalf, he does so as any other witness, and within the limits of the appropriate rules he may be cross-examined as to the facts in issue. (Cases cited.) He may be examined for the purpose of impeaching his credibility. * * * His waiver is not partial; having once cast aside the cloak of immunity, he may not resume it at will, whenever cross-examination may be inconvenient or embarrassing." This Court said in the Banning case, supra, that when a defendant takes the witness stand in a criminal case "he sheds his cloak of constitutional immunity from self-incrimination and stands before the bar in the role of a witness and as such becomes subject to cross-examination in the same manner and to the same extent as any

other witness." See also: Fitzpatrick v. United States, 178 U.S. 304, 315, 20 S.Ct. 944, 44 L.Ed. 1078; Segal v. United States, 246 F.2d 814, 818–819, C.A. 8th; United States v. Lowe, 234 F.2d 919, 922, C.A.3rd; Blockburger v. United States, 50 F.2d 795, 798, C.A.7th, affirmed 284 U.S. 299, 304–305, 52 S.Ct. 180, 76 L.Ed. 306.

■ Although the foregoing cases deal specifically with the right to cross-examine a defendant who elects to become a witness in his own behalf, we think it is clear from those cases that impeachment of a defendant so testifying is not limited to cross-examination and that he is subject to impeachment as any other witness would be. In Reagan v. United States, 157 U.S. 301, 305, 15 S.Ct. 610, 611, 39 L.Ed. 709, the Supreme Court said that if a defendant testifies in his own behalf, "His credibility may be impeached, and by the same methods as are pursued in the case of any other witness." This Court specifically so stated in Banning v. United States, supra, 130 F.2d 330, 337, C.A. 6th. See also: Fitzpatrick v. United States, supra, 178 U.S. 304, 316, 20 S. Ct. 944, 44 L.Ed. 1078; Berra v. United States, 221 F.2d 590, 597, C.A.8th, affirmed 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013; Steele v. United States, 243 F.2d 712, 714, C.A.5th. Cross-examination is allowed because it is one way of impeaching the credibility of a witness. But other methods are also well recognized and used for that purpose. Accordingly, we think it logically follows that the credibility of a defendant as a witness can be impeached in any of the ways which are recognized and used for the impeachment of any witness. In addition to cross-examination, other well recognized methods of impeachment are proof that the witness has been previously convicted of a felony. Henderson v. United States, supra, 202 F.2d 400, 405, C.A.6th, testimony showing previous statements which are contradictory to what the witness has testified to before the jury. The Seeandbee, 102 F.2d 577, 581, C.A.6th; Duarte v. United States, 171 F.2d 971, 972, C.A. 5th, and testimony that the reputation of the witness for truth and veracity is bad. Swafford v. United States, 25 F. 2d 581, 584, C.A.8th; Sawyear v. United States, 27 F.2d 569, 570, C.A.9th; Hayden v. Commonwealth, 140 Ky. 634, 636–637, 131 S.W. 521; Creekmore v. Crossno, 259 F.2d 697, 698, C.A.10th.

■ Applying the foregoing legal principles to the present case, we are of the opinion that it was not error for the District Judge to receive in evidence the testimony of the two police officers that the general reputation of the defendant for truth and veracity was bad. Miller v. United States, 288 F. 816, 818, C.A.5th; Hyche v. United States, 135 F.2d 44, C.A.5th. In Underhill's Criminal Evidence, Fourth Edition, Section 423, it is said, "Either state or defendant may always introduce independent evidence tending directly to show that a witness for the opponent possesses a bad reputation for veracity to impeach such adverse witness after he has been examined in chief by the party calling him." This statement is supported by numerous cases from the State courts, cited in a note. In Section 167 of the same work, the distinction is drawn between a defendant's general reputation for truth and veracity and his character in general. Reference is also made in Vol. 98 C.J.S. Subject, Witnesses § 494, to numerous State court cases holding that when the defendant becomes a witness impeaching evidence is admissible to prove that his general reputation for truth and veracity is bad, although evidence is not admissible to show that his general character is bad. The same rule and the same distinction between reputation for truth and veracity as a witness and character in general is stated in Vol. III, Wigmore on Evidence, Third Edition, Sections 890 and 925.

■ One of the two witnesses, after stating that defendant's general reputation for truth and veracity was bad, was asked if, based on his knowledge of the defendant's general reputation for truth and veracity, he would believe the de-

fendant under oath. The other witness, after so testifying, was asked, "and would you believe the defendant under oath?" Both witnesses answered over objections by the defendant, they would not. Defendant contends that the admission in evidence of these answers was reversible error.

This is a question about which the authorities are apparently much in conflict. In Underhill's Criminal Evidence, Fourth Edition, Section 423, it is stated in the text, "A witness who is called to prove the bad reputation of another may, after he has testified to that reputation, be asked if he would believe the witness under oath." In the note in support of the statement numerous State court authorities are cited, although numerous other authorities are also cited as supporting the contrary rule. In Teese v. Huntingdon, 23 How. (64 U.S.) 2, 11–13, 16 L.Ed. 479, the Court refers to this conflict in the authorities and to the view expressed by Mr. Greenleaf that the weight of authority in the American courts is against allowing a question to be put to the impeaching witness whether he would believe the other on his oath, and to the contrary view expressed in Taylor on Evidence that the opinion of the impeaching witness, as to whether the opposing witness is entitled to be believed on his oath, is admissible to the jury.

In Hamilton v. People, 29 Mich. 173, 186–188, the Supreme Court of Michigan strongly criticized the view of Mr. Greenleaf and undertook to show that the weight of authority in the American courts was not as stated by him and that the cases relied upon by him did not support his statement. In that case the evidence was held admissible. This ruling was thereafter followed in Keator v. People, 32 Mich. 484, and People v. Ryder, 151 Mich. 187, 190, 114 N.W. 1021. In Ford v. Ford, 7 Humph. (Tenn.) 92, 101, the Supreme Court of Tennessee referred to the view expressed by Mr. Greenleaf and declined to follow it. In Hillis v. Wylie, 26 Ohio St. 574, the Supreme Court of Ohio also referred to the view expressed by Mr. Greenleaf and stated that an examination of the authorities led it to a different conclusion. It held that the question was a proper one. In Foure v. Commonwealth, 205 Ky. 62, 68, 265 S.W. 443, the Kentucky Court of Appeals approved the subject matter of such a question, but criticized the form there used. See also: Bowles v. Katzman, 308 Ky. 490, 495–496, 214 S.W.2d 1021.

In three early cases in Federal District Courts it was held that it was not error to ask an impeaching witness, after testifying that the general reputation for truth and veracity of an opposing witness was bad, whether, from his knowledge of that general reputation he would believe the witness on oath. Patriotic Bank v. Coote, Fed.Cas. No. 10,807 (1827), Dist. Columbia; United States v. Masters, Fed. Cas. No. 15,739 (1834), Dist. Columbia; United States v. Vansickle, Fed.Cas. No. 16,609 (1840), District of Mich. In Held v. United States, 260 F. 932, C.A.5th, such evidence was held admissible. This also appears to be the ruling in Swafford v. United States, supra, 25 F.2d 581, 584, C.A.8th.

In Colbeck v. United States, 10 F.2d 401, 403, C.A.7th, the Court expressed the opinion that the weight of authority was against the admissibility of such evidence, although such authorities were not cited and apparently the Court relied in part upon the statement of Mr. Greenleaf hereinabove referred to.

In Colbeck v. United States, 14 F.2d 801, 803–804, C.A.8th, the Court referred to Greenleaf on Evidence, but based its ruling that the evidence was not admissible on the ground that the first question propounded dealt with the reputation for *honesty* and veracity of the witness being impeached and was too broad a basis upon which to rest the second question as to whether the witness would testify falsely. It also held that even if erroneously excluded, it was not prejudicial error. It will also be noticed that this ruling was prior to the Court's subsequent ruling in Swafford v. United States, supra, 25 F.2d 581, C.A.8th.

An interesting discussion of this question is found in Vol. VII, Wigmore on Evidence, Third Edition, Section 1985. The author points out that it is inconsistent to hold that evidence as to a witness's character is restricted to evidence concerning his general reputation with respect thereto and to allow the impeaching witness to give his individual opinion as to whether he would believe the witness on oath; yet only a minority of the states, with particular reference to Connecticut, Iowa, Maine, Massachusetts and North Carolina, exclude such evidence. The majority of the states, using one reason or another, and according to the author often ruling illogically, apparently permit such testimony to be introduced. We recognize the merit of the statement in the text that it is not always easy to say what is the accepted law of a given jurisdiction.

Under the circumstances, we think it is advisable to follow what appears to us to be the majority rule and to hold such evidence admissible.

Defendant also contends that the District Judge erred in not instructing the jury that the indictment was not evidence and in incorrectly instructing the jury with respect to circumstantial evidence. No request was made for specific instructions on these issues and no objection was made to the instructions as given. The evidence as to defendant's guilt was strong. In our opinion the instructions considered as a whole covered these issues and were not prejudicially erroneous. Rule 30, Rules of Criminal Procedure; Garner v. United States, 244 F.2d 575, C.A.6th, cert. denied 355 U.S. 832, 78 S.Ct. 47, 2 L.Ed.2d 44; Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150; Continental Baking Company v. United States, 281 F.2d 137, 146, C.A.6th.

Nor do we find any prejudicial error in the suggestion of the District Judge to the members of the jury that after retirement to the jury room they refrain from immediately expressing their views as to the guilt or innocence of the defendant, and that an expression of such views be delayed until the foreman called for a vote on the subject. This was a suggestion, not an instruction or order, and was accompanied by a logical statement of the reason therefor. We believe it was helpful in the reaching of a proper verdict.

The judgment is affirmed.