## SAWYEAR et al. v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
July 16, 1928.

Rehearing Denied August 20, 1928.

No. 5407.

**1. Witnesses ⚖️342, 344(1), 344(4), 345(1)—Inquiry as to witness' occupation and environment, as well as reputation for veracity or conviction of criminal offense, may be made to impeach him.**

To impeach a witness, inquiry within a reasonable range as to his occupation and the environment in which he chooses to live, as well as his bad reputation for veracity or conviction of criminal offense of certain class, may be made.

**2. Witnesses ⚖️349—Extent of inquiry as to witness' occupation and environment, for impeachment purposes, is largely within trial court's discretion.**

Extent to which inquiry as to witness' occupation and environment in which he chooses to live may be pursued for impeachment purposes, in respect to both period covered and specific details, is largely within discretion of trial court.

**3. Witnesses ⚖️344(4)—Evidence of witness' occupation and environment is admissible to impeach him only in exceptional cases, for cogent reasons.**

Evidence as to witness' occupation and the environment in which he chooses to live will be received for impeachment purposes only in exceptional cases, where the reasons are cogent.

**4. Criminal law ⚖️1170½(5)—Sustaining objections to cross-examination of witness as to former criminal occupation and court's rebuke held not prejudicial error.**

Court's rulings sustaining objections to questions as to witness' criminal occupation before his appointment as prohibition agent, and comment that, "when counsel resorts to such tactics, the jury may draw such inference adverse to their case as they may see fit," held not prejudicial error, in absence of any suggestion that witness was convicted on charge sought to be shown.

**5. Intoxicating liquors ⚖️134—Fermenting mixture of corn, sugar, water, yeast, and 10 per cent. alcohol practically ready for distillation held "mash, wort, or wash," within statute (26 USCA § 242).**

Mixture of corn, sugar, water, and yeast in state of ferment, with 10 per cent. alcoholic content and practically ready for distillation, *held* "mash, wort, or wash," within Rev. St. § 3248 (26 USCA § 242; Comp. St. § 5982), defining distilled spirits or alcohol.

**6. Criminal law ⚖️792(3)—Court, instructing defendants must have directly participated or knowingly aided in unlawful enterprise, to be criminally responsible, was not bound to instruct that mere presence at still was insufficient to warrant conviction.**

Court, giving instructions that defendants must have participated in unlawful enterprise, either directly or by knowingly giving aid and assistance in carrying it on, to be criminally responsible, was not bound to apprise jury that

27 F.(2d)—36½

mere presence at still was not sufficient to warrant conviction of offenses charged, where there was other testimony making complete case, if believed.

**7. Criminal law ⚖️1038(3), 1056(1)—Appellants, not excepting to instruction given, nor making further request or suggestion, cannot complain of failure to define reasonable doubt.**

Defendants, taking no exception to instruction to acquit, unless jury found defendants guilty beyond reasonable doubt, nor making any further request or suggestion, cannot first complain on appeal that court did not define reasonable doubt.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; George M. Bourquin, Judge.

Charles Sawyear, Oscar Waller, George Newman, and Benjamin A. Newman were convicted of conspiracy to violate the National Prohibition Act, and making and fermenting of mash in a place other than a distillery authorized by law, and Benjamin A. Newman was also convicted of prosecuting a distilling business without giving bond, and they bring error. Affirmed.

See, also, 25 F.(2d) 357.

Paul Carrigan, of Seattle, Wash., for plaintiffs in error.

Anthony Savage, U. S. Atty., and Paul D. Coles, Asst. U. S. Atty., both of Seattle, Wash.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. The appellants were tried upon an indictment charging in the first count a conspiracy to violate the National Prohibition Act (27 USCA), in the second the prosecution of a distilling business without giving bond as required by the revenue law, and in the third the making and fermenting of 3,000 gallons of mash in a place other than a distillery authorized by law. They were all found guilty on the first and third charges, and Benjamin Newman alone was found guilty on the second.

The evidence for the government consisted mainly of the testimony of four prohibition agents. Smith and Jackson went to defendant Andrea's ranch, at a remote place in the woods, about midnight, and in a still house there observed a large still in operation. Upon entering they found defendant Oswald Newman standing beside the still and defendant Sawyear asleep on a mattress. Upon being awakened, the latter expressed doubt that the agents were federal officers, for, as he said, when he was employed shortly prior thereto the man who hired him rep-

resented that the still was "protected." Other conversations of an incriminating character ensued between the agents and these defendants. The still was of 500 gallons' capacity, with full equipment, in a specially erected building. In the vats the agents found 3,000 gallons of mash, with high alcoholic content, ready for distillation. In and about the building they further found 100 gallons of whisky, several sacks of corn and sugar, yeast, several drums of kerosene, and several kegs. At Andrea's barn they found quantities of like articles.

Jackson remained near the still until the following morning, when Andrea came in, took a drink, and acted like "one who was at home." Upon being arrested and interrogated, he admitted in some detail his participation in the enterprise.

The other two agents, Hubbard and Fryant, had no personal knowledge of the facts, but gave testimony touching conversations with the defendant Benjamin Newman. According to Hubbard, this defendant approached him on the morning after the raid, which was on February 17th, and on February 25th, and again on February 28th, each time interceding on behalf of the other three. Stating that he was the owner of this and other stills, and that his codefendants were acting with him in a subordinate capacity, he sought to induce Hubbard for a consideration to bring about their release, to have the seized property returned, and to secure protection for them in the future. On the last date he suggested that, if Hubbard had a friend on the prohibition force, he be brought in at the next meeting. Hubbard disclosed what had occurred to Agent Fryant, and they together, after laying the matter before the district attorney, met with Newman several times in the early part of March, at which meetings defendant repeated in substance what he had said to Hubbard alone, and made large offers of money for assistance and protection. To all of this the two agents testified in much detail.

[1] The first and perhaps the most serious assignment pertains to an incident occurring at the opening of Hubbard's cross-examination. On direct examination he testified that he was a prohibition agent in February, 1927, and up to September 10, 1927. To the first question put to him on cross-examination he answered that he was appointed prohibition agent on October 2, 1925, or a little more than two years prior to the trial. To the ensuing question, "Prior to October 2, 1925, what kind of business were you in?" the court sustained an objection with the comment that, "If you wish to impeach a person's reputation, there is a well-settled legal method by which it may be done." Then the following:

"Counsel for Defendant: I ask leave to ask one question showing specifically, your Honor—I want to show what occupation he was engaged in prior to October 2d; that in fact it was a criminal occupation. May I ask that for the purpose of the record?

"District Attorney: In the first place, the statement is wholly false.

"The Court: Objection sustained. Counsel knows he should not state that, and when counsel resorts to such tactics the jury may draw such inference adverse to their case as they may see fit. Proceed.

"Counsel for Defendants: What was your occupation before you became a federal prohibition agent? (Objection by the district attorney.)

"The Court: Objection sustained. We are not trying the witness; we are trying the defendants.

"Counsel for Defendants: Exception. It would affect his credibility. That is the purpose of the question."

We think that the general view implied by the rulings is erroneous. True, a witness may be impeached by testimony that he bears a bad reputation for veracity, or by showing that he has been convicted of a criminal offense within certain classes; but the weight of his testimony, as well as its credibility, may be affected by other circumstances, and within a reasonable range inquiry may be made touching his occupation and the environment in which he chooses to live. The rule is too well settled to require extensive citation. See 28 R. C. L. p. 610.

[2, 3] But it does not necessarily follow that the rulings here constituted prejudicial error. The extent to which such inquiry may be pursued in respect both to the period covered and the specific details must of necessity be left largely to the discretion of the trial court. By statutory declaration in some of the jurisdictions, impeachment by evidence of particular wrongful acts is prohibited, and a witness is not required to give an answer respecting a fact not in issue which will directly tend to degrade him. See, for example, sections 2051 and 2065, Cal. Code of Civil Procedure, 1923; sections 10668 and 10674, Montana Rev. Codes 1921; and sections 8038 and 8044, Idaho Comp. Stat. 1919. In the absence of statute there seems to be great diversity in the practice, but the better view is thought to be that such evidence is within the trial court's dis-

cretion, and will be received only in exceptional cases, where the reasons are cogent. Wigmore on Evidence (2d Ed.) § 983.

[4] In harmony with these observations we think that, had defendants sought merely a discovery of Hubbard's general business or occupation and environment for a reasonable period prior to his appointment as prohibition agent, the right should have been recognized. But, while such was the form of the question, the court may very well have understood, from the surrounding circumstances, the real purpose, which, we are now expressly apprised by the appellant's brief, was to show that prior to his appointment Hubbard was one of numerous parties named in an indictment charging a conspiracy to violate the National Prohibition Act, and perhaps other laws relating to intoxicating liquors, the same being the indictment involved in the case (Olmstead v. U. S.) reported at 19 F.(2d) 842, 850. But there was and is no suggestion that the witness was ever convicted upon the charge. And it would be a strain upon our credulity to believe that in asking the questions counsel had the least hope that the witness would concede guilt, or even waive his privilege of declining an answer of an incriminating character. The purpose of the questions, therefore, could only have been by indirection and innuendo to prejudice the jury.

Under the circumstances the court may very well have got the impression that counsel's suggestion in the presence of the jury of a "criminal occupation" was in pursuance of this purpose, and while the rebuke complained of may have been unnecessarily harsh, and in a form not ordinarily to be approved, we cannot at this distance justly appraise the situation, and it may be that severity was called for, both as an antidote and a deterrent. Upon the whole, we cannot say the incident constituted prejudicial error.

[5] Somewhat feebly it is argued that a verdict should have been directed for defendants upon the ground that (quoting from the brief) "corn, sugar, water and yeast are not 'mash, wort, or wash,' within the meaning of the statute." The mixture was in a state of ferment, with a 10 per cent. alcoholic content, and was practically ready for distillation. Section 3248, R. S. U. S. (26 USCA § 242; Comp. St. § 5982), provides that distilled spirits or alcohol within the meaning of the Revenue Act is the substance "which is commonly produced by the fermentation of grain, starch, molasses, or sugar, including all dilutions and mixtures of this substance," etc. Accordingly the contention is thought to be without merit.

[6] Defendants requested several instructions, all to the effect that their mere presence at the still was not sufficient to charge them with criminal responsibility, which in form the court failed to give. But the instructions given clearly implied that such is the law, and the court was not bound to segregate a single condition, and advise the jury that it alone was insufficient to warrant a verdict of guilty, when there was other testimony which, if believed, made a complete case. The jury could not hear the instructions given without being informed that, to be chargeable with criminal responsibility, a defendant must have participated in the unlawful enterprise, either directly or by knowingly giving aid and assistance in carrying it on.

[7] Early in the instructions the jurors were advised of the presumption of the defendants' innocence, which, said the court, "as you know, requires that they shall be acquitted unless it is overcome by the evidence to a degree that it persuades your judgment they are guilty of some one or more of the counts, beyond a reasonable doubt." At the close of the instructions, upon inquiry by the court whether defendants had any exceptions, counsel said: "The defendants request that your honor give an instruction as to reasonable doubt. I don't think you did give one." The court responded: "I have; I told the jury, unless they found the defendant guilty beyond a reasonable doubt, they are to acquit." Apparently this was satisfactory, for counsel took no exception and made no further request or suggestion. That being the case, defendants cannot now for the first time complain that the court did not attempt a definition of reasonable doubt.

Affirmed.