**Aaron HODGE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 20517.**

United States Court of Appeals Ninth Circuit.

July 3, 1969.

John H. Colteaux (argued), of Hanson, Bridgett, Marcus & Jenkins, San Francisco, Cal., for appellant.

Shelby R. Gott (argued), Asst. U. S. Atty., Edwin L. Miller, Jr., U. S. Atty., San Diego, Cal., for appellee.

Before CHAMBERS, BARNES, HAMLEY, MERRILL, KOELSCH, BROWNING, DUNIWAY, ELY and HUFSTEDLER, Circuit Judges.

MERRILL, Circuit Judge:

In this case a panel of this court, by divided vote, reversed the District Court. This court, in banc, then took the case on rehearing. We affirm.

Appellant stands convicted of the transportation of a stolen motor vehicle in foreign commerce in violation of 18 U.S.C. § 2312. On this appeal he con-

tends that he was, without intelligent waiver, deprived of the assistance of counsel.

The record shows that on arraignment February 8, 1965, five days after filing of the indictment, counsel was appointed to represent appellant and continued to represent him up to the original trial date, March 16, 1965. On that date appellant expressed the desire to represent himself and trial was continued to March 23, 1965, before a different judge, with appellant then representing himself. Although acceding to appellant's insistence upon self-representation, the court on March 16 nevertheless directed appointed counsel to be present to lend such assistance as would be desired by appellant. At all stages appellant was either represented by counsel or had counsel available for assistance.

The case thus does not present the question of waiver of right to counsel in the typical trial setting exemplified by Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), where counsel was neither requested nor offered and the defendant contended that he was ignorant of his right to be represented.

 Here appellant clearly knew of his right. His "waiver" lay in his assertion of his right to represent himself [1]—a right the court could not properly deny. 28 U.S.C. § 1654; Bayless v. United States, 381 F.2d 67, 71 (9th Cir. 1967); Reynolds v. United States, 267 F.2d 235 (9th Cir. 1959). The question, then, is whether his assertion of this right was "intelligent." [2] In this context we take this to mean whether he was sufficiently informed of the consequences of his choice. In our judgment he was.[3]

1. It may be contended that we are not confronted with a question of waiver at all, since the court in effect rejected the waiver tendered by appellant and preserved his constitutional right by making assistance of counsel available at all times. We choose, however, to treat the assertion of the right of self-representation as presenting the question of waiver irrespective of the presence of advisory counsel.

2. The basic rule stated in Johnson v. Zerbst, 304 U.S. at page 464, 58 S.Ct., at p. 1023 is:

"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

3. On March 16 the following colloquy took place:

"MR. CURTO: I want to make a motion to be relieved in this case, your Honor. As I explained to the Court this morning, the defendant feels there has been an abridgement of his constitutional rights in not being brought to trial timely.

We have had a difference of opinion this morning, so I will let the defendant speak for himself on this matter.

THE DEFENDANT: Due to some circumstances that have come up in the case, I would like to fight it myself because of a witness or two that's supposed to appear against me, and feel that I have a better chance there than an attorney that don't know the circumstances of the witnesses. These are witnesses that are supposed to appear in court to testify against me, supposedly.

THE COURT: Do you think you can handle your case?

THE DEFENDANT: I'm no lawyer, but I'm willing to give it a try because my freedom is at jeopardy.

THE COURT: Do you understand anything about the procedure?

THE DEFENDANT: I have been through a couple of small county courts.

THE COURT: Do you know how to select a jury?

THE DEFENDANT: Yes, sir; I think I could select my own jury. I realize that most of it is at the discretion of the Court, but due to some peculiarities in this case, I would like to get a mixed jury, if it is possible.

THE COURT: Well you can advise your counsel as to what, who you want on the jury. You have a right to exercise certain peremptory challenges and you can advise your counsel as to what jurors you wish to keep.

■ The question before the judge was not whether the defendant was professionally capable of acting as his own lawyer. Few defendants are, and the right of self-representation is not so conditioned. The question was simply whether the defendant understood the charges against him and was fully aware of the fact that he would be on his own in a complex area where experience and professional training are greatly to be desired.

Appellant contends that the warnings of the judges were not sufficient since the standard to be followed by a judge in communicating intelligence is that set forth in Von Moltke v. Gillies, 332 U.S. 708, 723–724, 68 S.Ct. 316, 322, 92 L. Ed. 309 (1948):

"To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered."

We note first that appellant makes no showing that he was prejudiced by the failure of the District Court to follow *Von Moltke*. Nowhere is there any suggestion that specific *Von Moltke* information was unknown to him and that, possessed of that information, he would have changed his mind about representing himself. The record convincingly suggests the contrary.[4]

THE DEFENDANT: I just felt that because of one witness, that I had rather be the counsel for my own purposes.

THE COURT: I don't quite understand what the witness has got to do with it.

THE DEFENDANT: I have just— I understand I have a right to be my own counsel for the defense, and I am asking for that right; that's all.

THE COURT: You have that right, certainly you do.

THE DEFENDANT: Yes.

THE COURT: And I will allow you to do it.

I think you are making a mistake, but that's up to you. Mr. Curto is a very competent lawyer.

\* \* \* \* \*

THE COURT: I will allow you to act as your own counsel, but I would request that Mr. Curto be present to aid you and help you in procedural matters. But I want you to know that I think you are at a distinct disadvantage in acting as your own attorney. I say that from experience and I know.

THE DEFENDANT: Yes, your Honor.

THE COURT: And if you gum up your case, there is no one to blame but yourself. When a case is gummed up, usually they blame their attorney, but you can't do that."

On March 23 the trial judge (a different judge) informed appellant at the outset:

"I am not—I am not going to lead you by the hand, here—I am not going to try the case. You were given a chance to have a lawyer. You are going to have a lawyer to talk to. If you get in trouble, you are going to have to bail yourself out. I can't be your lawyer and the judge, too."

4. Throughout trial appellant showed himself knowledgeable in matters of substantive law and procedure. In his opening statement he indicated that he intended, in his defense, to show lack of possession, lack of knowledge, and that his actions took place in Mexico and thus were extraterritorial and beyond federal jurisdiction. In closing argument he explained to the jury that the Government's burden was to establish every element of the offense beyond a reasonable doubt. He then ex-

However, we do not in any event regard *Von Moltke* as the appropriate guide to the trial judge in a situation such as this. While its language was couched in general terms of right to counsel and a waiver of such right, the court in *Von Moltke* was clearly concerned with waiver of counsel occurring contemporaneously with a plea of guilty. The informational items recited as essential to an intelligent waiver relate to such a plea and serve to assure that a defendant understands the consequences of confessing guilt and that he knows enough of the law to be able intelligently to reach the conclusion that he is guilty under the law.

Such colloquy has no place in a case where guilt is denied and an offer of counsel is rejected. Attempts to relate it to such a case would seem to subject the defendant to a questionable pretrial probing of his defenses.

We conclude that appellant waived his right to be represented by counsel by an intelligent assertion of his right of self-representation.

■ Appellant contends that he was, in any event, entitled to be represented by counsel at the time of sentencing. In absence of any indication to the contrary by appellant, the court was entitled to assume that the waiver was still in effect. White v. United States, 354 F.2d 22 (9th Cir. 1965). Furthermore, appellant's advisory counsel was present on that occasion for such use as appellant chose to make of him. His failure to utilize him, with full knowledge of his right to do so, amounted to waiver.

■ Appellant contends that refusal to release him on his own recognizance pending trial was an abuse of discretion and prejudiced him in preparation for

trial. Abuse of discretion does not appear. Appellant had counsel for five weeks prior to the request, which was made on the scheduled date of trial. Appellant was from out of state, with no local contacts, family or otherwise, willing to vouch for him. On these facts, the judge could properly conclude that it was not reasonably certain that the defendant would appear.

■ Appellant contends that he was not permitted to call witnesses and was forced to go to trial unprepared. The record does not bear this out. On March 23 appellant expressed a desire to subpoena certain witnesses and the judge stated that the motion would be taken up later. After ascertaining the Government's readiness to proceed, appellant and his advisory counsel were taken into chambers and the judge invited appellant to present his motions. After conferring with advisory counsel appellant moved to disqualify the judge before whom he had appeared on March 16. He was advised that he would not be tried by that judge and was asked if he had any further motions to make. Appellant stated that that was all and indicated his readiness to proceed to trial. Nothing was then said about obtaining witnesses. We find no error in proceeding to trial under these circumstances.

Appellant complains that certain evidence came in that would have been held inadmissible had objection been interposed. This, of course, was a risk he took in representing himself.

■ Appellant complains that it was somehow unfair for the Government to introduce testimony regarding his veracity after he had testified. This is without merit. Such testimony is admissible once the defendant takes the stand. Sawyear v. United States, 27 F.2d 569 (9th

---

plained each essential element of a Dyer Act offense and reiterated his defenses. On sentencing he exhibited his awareness of the maximum penalty.

Here it is entirely proper to look beyond the judge's remarks to ascertain intelligence. See United States v. Plattner, 330 F.2d 271, 276 (2d Cir. 1964). While

in Heiden v. United States, 353 F.2d 53 (9th Cir. 1965), approved in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), this court held that such might not be done, we were there dealing with acceptance of a guilty plea under the express requirement of Rule 11, F.R.Cr.P.

Cir.), cert. denied, 278 U.S. 650, 49 S.Ct. 96, 73 L.Ed. 562 (1928); United States v. Walker, 313 F.2d 236 (6th Cir.), cert. denied, 374 U.S. 807, 83 S.Ct. 1695, 10 L. Ed.2d 1031 (1963).

█ We find no merit in the contention that appellant was prejudiced by the presence of advisory counsel. Bayless v. United States, 381 F.2d 67 (9th Cir. 1967).

Judgment affirmed.

ELY, Circuit Judge, with whom HUF-STEDLER, Circuit Judge, joins (dissenting):

I respectfully dissent. The panel which originally heard this appeal consisted of Judge Merrill, District Judge Albert Lee Stephens, Jr.,[A] and me. With Judge Merrill dissenting, the panel determined that the judgment of conviction must be reversed. Its disposition was based solely upon the conclusion, carefully explained, that the record, when viewed in the light of the strict standards of existing precedents, did not adequately disclose a "knowing and intelligent" waiver by the appellant of his constitutional right to trial counsel. Of the opinions, in slip form, it has been written, "The interpretation of the majority is to be preferred. * * * It is proper that the safeguards placed on 'the crucial rights of one insisting upon his innocence' be equal to 'the rights of one who seeks to confess a crime by a plea of guilty.'" Comment, Waiver of Counsel—Hodge v. United States, No. 20,517 (9th Cir., Mar. 5, 1968), 20 Hastings L.J. 965, 971 (1969).

Following a rehearing in banc, the original panel's decision is now overruled by the majority. I maintain my original views, and on the issue considered by the original panel, I can now express them in no better way than by reiterating the original panel's principal opinion, of which I was the author.

At this point, however, I am first compelled to express disagreement with the majority's disposition of a significant issue which, owing to the restricted ground upon which the disposition by the original panel was based, I have not hitherto discussed. That issue involves the question of whether, "knowingly and intelligently," the appellant waived his right to the presence of counsel at the *sentencing* proceedings in the District Court. The majority rather casually disposes of this difficult problem by reasoning that once it has been properly determined that there has been a knowing and intelligent waiver of counsel at an early stage in the criminal proceedings, the trial judge may "assume" that the waiver remains operative throughout the proceedings in connection with sentencing. I do not agree that such a proposition is supportable generally, and I shall undertake to explain the reasons for my belief that the application of such a principle in this particular case is thoroughly inconsistent with the facts which the record reveals with unmistakable clarity.

Two years after the appellant's conviction, the Supreme Court declared that the Sixth Amendment confers the right to counsel at the time of sentencing. In a unanimous opinion, written by Mr. Justice Marshall, the Court reasoned that "the necessity for the aid of counsel in marshaling the facts, introducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case as to sentence is apparent." Mempa v. Rhay, 389 U.S. 128, 135, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967). Soon thereafter, in a short *per curiam* opinion, the Court held that the rule announced in *Mempa* must be applied retroactively. McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968).

Set forth in the margin is the pertinent colloquy between the appellant here and the sentencing judge.[B] How, in the

A. Honorable Albert Lee Stephens, Jr., United States District Judge, Central District of California, sitting by designation.

B. "THE CLERK: 61–34125-Criminal, United States of America v. Aaron Hodge.
THE COURT: What does the defendant or his attorney have to say before

face of this record, the majority can simply assert that since a so-called *advisory* counsel was present, "His failure to utilize him, *with full knowledge of his right to do so*, amounted to waiver" is beyond my ability to accept, or even understand. There was absolutely no mention to the appellant of a "right" to rely upon, or "utilize," such counsel during the post-trial proceedings nor any explanation as to the importance of utilizing counsel at that critical stage. The majority ascribes to Hodge, a person of no legal training, a prophetic power supposedly enabling him to predict that two years after his conviction, the Supreme Court would extend sixth amendment protections, retroactively, to sentencing proceedings! We have been repeatedly instructed that to waive a right effectively, one must understand the consequences of the purported waiver. Here, without having been given *any* explanation by the court, it is inconceivable that a person of the appellant's legal ignorance could fully comprehend the beneficial role which an attorney might play in the determination of sentence and which the Supreme Court, in *Mempa*, held to be of such importance. Hence even assuming *arguendo* that the appellant had some omniscient premonition of *Mempa* and *McConnell* and of his consequent right to rely on available "advisory" counsel, I am convinced that the record in his case cannot be so read as to demonstrate, as it must, or to even reflect, his effective waiver of the constitutional right now under discussion.

The record of the pre-trial proceedings, reporting the appellant's insistence upon self-representation, discloses that Hodge's sudden "difference of opinion" with one of the attorneys supposed to advise him arose solely from his wish personally to cross-examine one or two witnesses who, according to his understanding, would testify against him during the trial. It is apparent that at the time of this "waiver," neither the court nor the appellant believed that these witnesses would appear at the sentencing proceedings. Nevertheless, the majority concludes that the record discloses a waiver of counsel for the sentencing proceedings by reasoning that the District Judge could properly assume that the initial "waiver" remained in effect at the later proceedings! I submit that the record fully exposes the sophistry of this reasoning.

Moreover, I cannot believe that, under any circumstances, a trial judge should be permitted to proceed on the assumption which is suggested by the majority. To engage in such an assumption is to nullify the strong opposing presumption which the Supreme Court has consistently directed us to apply when considering an issue involving the claimed waiver of significant constitutional rights. The Supreme Court rejected just such an assumption in Chessman v. Teets, 354 U.S. 156, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957). There, in one of Chessman's numerous attempts to avoid California's gas chamber, the petitioner argued that he had been denied his constitutional right to counsel when, owing to the death of the court stenographer, post-trial proceedings were held to establish a record of the trial without allowing the petitioner to be represented by counsel. The prosecuting authorities insisted that by waiving counsel at trial Chessman had thereby waived his right to counsel in subsequent proceedings. The Supreme Court held to the contrary, and I respectfully submit that the majority's opinion in our case disregards controlling precedent of the highest authority.

sentence? I read your letter, Mr. Hodge. Do you have anything to say before sentence is imposed? The defendant shakes his head. Answer up, please.
THE DEFENDANT: No, sir.
THE COURT: Do you have anything to say before sentence, Mr. Curto?
MR. JAMES R. CURTO: No, sir.

THE COURT: Does the Government have a recommendation in this case?
MR. SIROTA: After speaking with Mr. Gott, who handled this matter, it would seem that a report of some sort might be recommended due to the attitude of the defendant in the matter."

"We think the petitioner was entitled to be represented throughout those proceedings either in person or by counsel. * * * *We cannot agree that petitioner's refusal to be represented by counsel at the trial constituted a waiver of his right to counsel at the settlement proceedings."*

*Id.* at 162, 77 S.Ct., at 1130 (Emphasis supplied).

On this point, I simply emphasize, in conclusion, the undeniable fact that at no time during the proceedings leading to appellant's conviction and sentence was anything whatsoever said to the appellant of his right to counsel at sentencing. The able district judges concerned with the proceedings cannot be faulted for the omission, since the Supreme Court had not then extended the sixth amendment right to counsel. Nevertheless, *Mempa* must be applied retroactively, and the duty of thorough inquiry was upon the court just as if the decision had been previously announced.

"It is the solemn duty of a federal judge before whom a defendant appears without counsel to make a thorough inquiry and to take all steps necessary to insure the fullest protection of this constitutional right [to counsel] at *every stage* of the proceedings. Johnson v. Zerbst, 304 U.S. 458, 463 [58 S.Ct. 1019, 1022, 82 L.Ed. 1461];

Hawk v. Olson, 326 U.S. 271, 278 [66 S.Ct. 116, 120, 90 L.Ed. 61]."

Von Moltke v. Gillies, *supra* at 722, 68 S. Ct. at 322 (Emphasis added).

Clearly, the record here does not support the proposition that this duty, albeit *ad hoc* in nature, was adequately fulfilled, and since it is inconceivable that the appellant, two years before *Mempa*, either intuitively knew of his right to counsel at sentencing or, absent explanation, of the consequences of waiving such assistance, *Mempa*, in its retroactive application, should be held by us to compel reversal.

Turning once again to the question of whether Hodge, "knowingly and intelligently," waived his right to the assistance of counsel during trial, the original panel did not at the time of the issuance of its opinion, then have the benefit of McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). That opinion, if I interpret it correctly, holds, in effect, that there is no rigid formula which must be employed in making the determination of whether an accused has effectively waived his right to trial counsel. This is, essentially, the thrust of the principal opinion of the original panel, and the thrust was so clarified by the carefully written separate concurring opinion of District Judge Stephens.[C] As my original opinion will

---

**C.** STEPHENS, District Judge (concurring) :

I concur in the opinion written by Judge Ely. As he points out, a person who claims to be innocent is entitled to as much protection as a person who tenders a plea of guilty. When a defendant who has pleaded not guilty indicates that he wishes to waive his right to counsel, he is in much the same position as a person who tenders a plea of guilty in that both are offering to give up important constitutional guarantees which are designed to protect the freedom and liberty of the individual. In Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1946) the Supreme Court held, "He may waive his constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open." [1] It is the court's duty

1. I believe that this statement is the clearest definition of defective waiver and that "intelligent," "knowing" and "competent" when referring to an effective waiver simply mean that the defendant "knows what he is doing and his choice is made with eyes wide open."

to be sure that the waiver meets this test. Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1947) points out, "To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand." In the case before us, the defendant was warned of the hazards of waiving the assistance of counsel and cautioned against it, but the record does not reveal that the court in-

show, it was believed that controlling precedent required that certain basic understandings on the part of an accused be ascertained. This conclusion was based primarily upon rather clear directions embodied in Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948). It remains my opinion that such ascertainment may be made in a manner which will not infringe upon the fifth amendment rights of an accused. Moreover, I am convinced that if the District Courts can exercise patience, even when provoked by one like Hodge, and will pattern their procedure after that which is required by Rule 11 [D] through its most recent interpretation in *McCarthy,* the problem of determining whether the right to counsel has been effectively waived will be simplified for both trial and appellate judges.[E] As the High

vestigated whether he knew what he was doing and if his choice was made with his eyes wide open.

The Adams case also points out that, "the Constitution does not force a lawyer upon a defendant." This suggests a distinction between the matter of accepting a plea of guilty and waiving the assistance of counsel, namely, that the court must accede to a defendant's demand that he be permitted to represent himself without the assistance of counsel,[2] but is not

2. This concept has been accepted since the Adams case in numerous decisions in which it is pointed out that the right to act as one's own counsel is a right derived from the Constitution. See United States ex rel. Maldonado v. Denno (C.A.N.Y.1965) 348 F.2d 12, certiorari denied 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020, which so holds and for citation of cases following the Adams case. A scholarly discussion of the constitutional basis for these rulings is to be found in United States v. Plattner, 330 F.2d 271 (1964).

required to accept a plea of guilty. It is difficult for me to see a division point between an effective and valid waiver of counsel and a determined insistence upon a right to represent himself without the assistance of counsel. A distinction between a waiver and a right may depend upon the circumstances of the case. Conceivably, if the assistance of counsel is not readily available, a defendant who would like the assistance of counsel might validly waive counsel in preference to delay as distinguished from refusing available counsel and insisting upon a right to proceed alone. In either situation the obligation of the court to be sure that the defendant knows what he is doing and that his choice is made with eyes wide open is the same.

The defendant stated to the court, "I understand I have a right to be my own counsel for the defense, and I am asking for that right; that's all." Nevertheless, I am of the opinion that in the whole context of the colloquy between the defendant and the court, this case falls into the category of waiver of counsel rather than a determined insistence upon the right to defend oneself.

D. Rule 11 of the Federal Rules of Criminal Procedure provides:

"A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

E. I imagine a colloquy which suggests the type of inquiry which would wholly eliminate the difficult problem which has met us here and, of more importance, would surely have not infringed fifth amendment rights. The imagined colloquy is as follows:

THE COURT: Mr. Attorney, you tell me that the defendant chooses to waive counsel and represent himself because of the arising of "a difference of opinion this morning." I do not know the specific nature of the "difference of opinion." I know nothing of the defendant's competency or of his intelligence of understanding. The right to counsel is a crucial right. The Supreme Court has directed that no district judge, including me, may accept a defendant's waiver of counsel absent conviction that the waiver and the assertion of the correlative right of self-representation are knowingly and intelligently made. Under Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed.

Court explained:

"Rule 11 * * * is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous postconviction attacks on the constitutional validity of guilty pleas."

309 (1947), I must, as far as practicable, satisfy myself reasonably that the defendant understands defenses which might be available to him, that he has been made aware of mitigating circumstances which might operate to his favor, that he apprehends the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, and other facts essential to a broad understanding of the whole matter. Either in your conference with the defendant this morning, or in any other conference, if you have had such, have you covered all of the matters which I have mentioned?

MR. ATTORNEY: I would not like to represent to your Honor that I have covered all of those matters as specifically as would seem to be required by the opinion of Mr. Justice Black in Von Moltke and the opinion of the Court of Appeals of the Ninth Circuit in Sessions v. Wilson, 372 F.2d 366 (9th Cir. 1966). Would your Honor permit me to confer with the defendant for an additional thirty minutes?

THE COURT: Certainly.

(Thirty minute recess)

THE COURT: Mr. Attorney, have you had a further conference with your client?

MR. ATTORNEY: Yes, your Honor.

THE COURT: Have you made the explanation I suggested covering the specific matters indicated?

MR. ATTORNEY: Yes, sir.

THE COURT: Did it appear that your client understood, insofar as it could be expected that a layman could do so, the explanations which you made?

MR. ATTORNEY: Yes, your Honor.

THE COURT: Very well. Mr. Defendant, you have heard the exchange of comments between the Court and the Attorney. Has the Attorney undertaken to make you aware of those factors which I have mentioned as being important to your case?

THE DEFENDANT: Yes, your Honor, he has.

THE COURT: Did you understand what he said?

THE DEFENDANT: Yes, I did.

THE COURT: Mr. Defendant, you have pleaded not guilty to the offense with which you are charged. The right to an attorney is a precious right, and it is the Court's view that you would be far 'better able to defend yourself if you allowed the attorney, with which the Government has provided you, to proceed. I understand that you have a very limited education and that your only experience in court matters has been in connection with insignificant, comparatively petty offenses. I strongly suggest that you do not endeavor to represent yourself. Now, in view of all that has been said, what is your wish?

THE DEFENDANT: Your Honor, I still believe that I would like to act as my own attorney.

THE COURT: Very well, Mr. Defendant. You leave me no choice. You have the constitutional right to waive the assistance of an attorney and to represent yourself, provided that you exercise the right competently, knowingly, and intelligently. Upon the record, I make the finding that you do so. Mr. Attorney, you are relieved as active counsel, but, if the defendant has no objection, I ask that you stand by during the trial to offer the defendant such procedural guidance as he might request of you. In that connection, Mr. Attorney, there have been occasions when lawyers of the indigent panel have been rather lax in the performance of their duties. Too many cooks do not improve the soup, and I want you, yourself, to be present during the defendant's trial. You are the only attorney who is familiar with the details of the case. My purpose is to insure that justice is done, and the accomplishment of that object might be frustrated if you were not available and other attorneys, with no knowledge of the facts, would step in from time to time as substitutes. Is that clear?

MR. ATTORNEY: Yes, your Honor.

THE COURT: Very well. The trial will be scheduled for this coming March 23d at 9:30 a. m. I will not proceed with other matters.

McCarthy v. United States, *supra* at 465, 89 S.Ct. at 1170 (Footnotes omitted). The objectives furthered by the Supreme Court's interpretation of Rule 11, a mere supervisory rule, applicable to one seeking to enter a plea of guilty, are, it seems to me, equally worthy, if not more so, when sought to be furthered in a case wherein one asserting innocence is claimed to have waived the constitutional right to counsel.[F]

Writing for the majority, my Brother Merrill rejects the necessity for any such searching personal inquiry as might have been patterned after Rule 11 and which would concern those subjects suggested by *Von Moltke*. He reasons:

> "Such colloquy has no place in a case where guilt is denied and an offer of counsel is rejected. *Attempts to relate it to such a case would seem to subject the defendant to a questionable pretrial probing of his defenses.*"

(Emphasis added.) His logic is not persuasive. The fact that some matters, discussed during a pretrial interview which seeks to follow *Von Moltke*, would probe possible defenses or matters about which the accused might properly remain silent during his trial presents no obstacle to the requiring of such an inquiry. Surely, such matters would be totally excluded from the ultimate determination of guilt or innocence. Indeed, I would have thought that the problem suggested by Judge Merrill was laid to rest in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). There, the Supreme Court held that certain testimony given by Simmons during pretrial proceedings in connection with his assertion of fourth amendment rights was erroneously admitted during his subsequent trial. Here, it is inconceivable to me that objectionable information which might have been elicited from Hodge in protecting his rights under the Sixth Amendment, could, consistent with *Simmons,* have been considered in the final determination of his guilt. Hence, I cannot accept the majority's only expressed objection to the type of comprehensive inquiry which I think is desirable and which, I believe, is required under the teaching of *Von Moltke*.

My original opinion, to which I adhere and in which the original footnote references have been retained, follows:

> The appellant was charged by indictment with the transportation of a stolen motor vehicle in foreign commerce, a violation of 18 U.S.C. § 2312. He appeals from the judgment which followed his conviction in a jury trial. Our attention is directed to a number of alleged errors in the proceedings below. Only one contention requires discussion. It pertains generally to appellant's right to counsel and, specifically, to his alleged waiver of that right.
>
> The record discloses that the indictment was filed on February 3, 1965. Thereafter, on February 8, 1965, an attorney was appointed to represent the appellant. At that time, after arraignment and a plea of not guilty,[1] the trial was set for March 16, 1965. On that day, the appointed counsel made a request to be relieved of re-

**F.** I perceive no significant difference between the problem which is presented by Hodge and that with which the Supreme Court wrestled in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Clearly, had the Alabama court followed the procedures which are now required of our district judges by Rule 11, Boykin, had he then pleaded guilty, would have been hard pressed to mount an effective post-conviction attack. Similarly, had the district judges who confronted Aaron Hodge made the kind of personal inquiry envisioned by the Supreme Court under the requirements of Rule 11, the attack which he makes here could, in all likelihood, have been summarily dismissed as frivolous. It is, therefore, only logical that the interests of orderly and efficient administration of criminal justice require application of the "prophylactic procedures of Rule 11," Boykin v. Alabama, supra at 1714 (Harlan, J., dissenting), to pretrial confrontations at which an accused seeks to waive his right to counsel.

1. The proceedings of the court on February 8, 1965, are shown in the record before us only by a minute entry.

sponsibility. He explained that because of "a difference of opinion this morning," the accused had made the decision to undertake to represent himself. A discussion between the court and the appellant then followed,[2] whereupon the court authorized the appellant to represent himself and relieved the appointed counsel from further responsibility, save for remaining in attendance during the trial "to aid * * * and help * * *' in procedural matters." The trial date was then continued until March 23, 1965. At that time, Mr. Curto, the original attorney who had been relieved of active responsibility but had been requested to be present in an advisory capacity, was elsewhere engaged and therefore unavailable. The prosecuting attorney represented that Mr. Curto had called him "frantically" and that "since he couldn't be here this morning Mr. Tatus was asked to be here in an advisory capacity by the head of the Indigent Panel." Mr. Tatus was present and advised the court: "Mr. Curto called me, your Honor, and advised me of the situation on Friday, and I told him I would sit

---

2. The full exchange between the court, appointed counsel, and the defendant was as follows:

"MR. CURTO: I want to make a motion to be relieved in this case, your Honor. As I explained to the Court this morning, the defendant feels there has been an abridgement of his constitutional rights in not being brought to trial timely.

We have had a difference of opinion this morning, so I will let the defendant speak for himself on this matter.

THE DEFENDANT: Due to some circumstances that have come up in the case, I would like to fight it myself because of a witness or two that's supposed to appear against me, and I feel that I have a better chance there than attorney that don't know the circumstances of the witnesses. These are witnesses that are supposed to appear in court to testify against me, supposedly.

THE COURT: Do you think you can handle your case?

THE DEFENDANT: I'm no lawyer, but I'm willing to give it a try because my freedom is at jeopardy.

THE COURT: Do you understand anything about the procedure?

THE DEFENDANT: I have been through a couple of small county courts.

THE COURT: Do you know how to select a jury?

THE DEFENDANT: Yes, sir; I think I could select my own jury, I realize that most of it is at the discretion of the Court, but due to some peculiarities in this case, I would like to get a mixed jury, if it is possible.

THE COURT: Well, you can advise your counsel as to what, who you want on the jury. You have a right to exercise certain peremptory challenges and you can advise your counsel as to what jurors you wish to keep.

THE DEFENDANT: I just felt that because of one witness, that I had rather be the counsel for my own purposes.

THE COURT: I don't quite understand what the witness has got to do with it.

THE DEFENDANT: I have just—I understand I have a right to be my own counsel for the defense, and I am asking for that right; that's all.

THE COURT: You have that right. Certainly you do.

THE DEFENDANT: Yes.

THE COURT: And I will allow you to do it.

I think you are making a mistake, but that's up to you. Mr. Curto is a very competent lawyer.

THE DEFENDANT: I believe I sent you a letter a couple of days ago. I don't know whether the Court has received it or not from the county jail.

THE COURT: No, I have not.

THE DEFENDANT: It was explaining some of these reasons why. I sent this Wednesday; excuse me, it was Friday.

THE COURT: I have not received it as yet.

THE DEFENDANT: That's the reason I was intending to approach the Bench to discuss a matter with you privately if it is possible.

THE COURT: I will allow you to act as your own counsel, but I would request that Mr. Curto be present to aid you and help you in procedural matters. But I want you to know that I think you are at a distinct disadvantage in acting as your own attorney. I say that from experience and I know.

THE DEFENDANT: Yes, your Honor.

THE COURT: And if you gum up your case, there is no one to blame but yourself. When a case is gummed up, usually they blame their attorney, but you can't do that."

in an advisory capacity until Mr. Curto could make his appearance." The court then disposed of "other matters" and after the morning recess called the appellant's case for trial. Observing that the second attorney was. apparently absent, the court inquired, "Where is Mr. Tatus?" When the Marshal replied, "He is upstairs in a jury trial," the prosecuting attorney suggested, "Maybe we could have Mr. Hatfield sit in." The suggestion was adopted, the court remarking: "Mr. Hatfield, this man has waived an attorney. I just want an attorney to be available to talk to if he wants to talk to one. You are appointed for that limited purpose." There is no indication that Mr. Hatfield had any knowledge whatsoever of the problems involved or that he was expected to or did perform any significant service. After a portion of the trial, Mr. Curto appeared, and another switch occurred.

The question before us is whether or not there was an intelligent waiver by the appellant of his right to counsel. Conversely, due to the opposing nature of the rights involved, there is the question as to whether the record reveals that the appellant was sufficiently competent to insist upon his right to represent himself. It may be noted that we have avoided using the adjective "intelligent" to describe insistence upon the right of self-representation. The avoidance is deliberate, for insistence on the exercise of that right is rarely, if ever, attended by intelligence in the broad sense of wise, objective judgment.

That an accused has the right to represent himself was clearly established in Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942). Although recognizing that "evidence and truth are of no avail unless they can be adequately presented" and that "essential fairness is lacking if an accused cannot put his case effectively in court," the Supreme Court declared that

"the Constitution does not force a lawyer upon a defendant." 317 U.S. at 279, 63 S.Ct. at 242. Thereupon, the Court laid down the general guideline: "He may waive his Constitutional right to assistance of counsel *if he knows what he is doing and his choice is made with eyes open.*" 317 U.S. at 279, 63 S.Ct. at 242 (emphasis added); *accord*, Carter v. Illinois, 329 U.S. 173, 67 S.Ct. 216, 91 L.Ed. 172 (1946). In so holding, the Court cited Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937), wherein Mr. Justice Black, writing for the majority, observed:

"The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, *and it would be fitting and appropriate for that determination to appear upon the record.*"

304 U.S. at 465, 58 S.Ct. at 1023 (emphasis added).

In *Adams* the Supreme Court held that the accused had intelligently waived his right to counsel and competently insisted upon his right to represent himself.[3] This result was reached in view of the history that when the accused first rejected the District Court's suggestion that he retain counsel, he stated "in substance that he desired to represent himself, that the case was very complicated, and that he was so familiar with its details that no attorney would be able to give him as competent representation as he would be able to give himself." 317 U.S. at 270, 63 S.Ct. at 237. Subse-

---

3. This decision was reached as part of the further holding that a defendant could waive trial by jury without the advice of counsel, where that waiver was an intelligent and competent one.

quently, at the beginning of that trial, the accused, when asked by the court if he was admitted to the Bar, "replied that he was not, but that he had studied law, and was sufficiently familiar therewith adequately to defend himself, and was more familiar with the complicated facts of his case than any attorney could ever be." 317 U.S. at 270, 63 S.Ct. at 238. Finally, the Court noted that the accused had previously represented himself in "extensive litigation" involving a relatively complex area of the law. 317 U.S. at 270 n. 1, 63 S.Ct. at 236.

On the other hand, the Supreme Court has held that a seventeen-year-old youth with a seventh-grade education did not intelligently waive his right to counsel, although he had informed the trial judge, in regard to the assistance of an attorney, that "he didn't want one, didn't have one, he wanted to get it over with." Moore v. Michigan, 355 U.S. 155, 161, 78 S.Ct. 191, 195, 2 L.Ed.2d 167 (1957).

In the case before us, as would be true in practically every similar case, it is apparent that the appellant was unlearned and ineffective in the presentation of his defense.[4] That this would be true could not necessarily be foreseen by a trial judge, and we do not here attach significance to the inadequate, legally incompetent manner in which the self-representation was actually conducted. The intelligent or competent waiver of counsel and the proper insistence upon the correlative right of self-representation cannot be evaluated by hindsight.

We do not in this opinion employ the word "competent" in the sense that it is employed in determining whether an ac-cused is "competent" to stand trial. If he is incompetent to such a degree as to prevent his trial, then it follows of course that he is not sufficiently competent to waive any essential constitutional rights which must attend his trial. If he is competent to stand trial, then he possesses sufficient intelligence to waive his rights, but that sufficiency of intelligence, of itself alone, does not establish competency to waive his right to the assistance of counsel. The effectiveness or validity of any claimed waiver must also depend upon the record's revelation that the accused, within the limits of his intelligence, was previously and reasonably advised of the possible consequences of the surrender. As the Supreme Court has explained: "The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1961).

In Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1947), Mr. Justice Black, in an opinion announcing the decision of the Court but speaking only for four Justices, stated:

"To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's

---

4. Late in the trial, in its "rebuttal," the prosecution inquired of a witness as to whether or not she knew the appellant's reputation for truth and veracity in the community in which he lived. Although the appellant had already testified in his own defense, he had offered no evidence that his reputation in such respect was good. The witness was permitted to answer that his reputation was bad, although she had not answered the previous inquiry as to whether she knew the reputation and, hence, foundation was lacking.

In fact, after failing to answer the foundational inquiry, she prefaced her subsequent conclusion with the admission: "Reputation I don't know." The appellant made no request for a continuance in order to attempt to obtain witnesses to refute the newly injected contention.

While appellant himself was under cross-examination, he permitted himself, without objection, to be asked about a previous crime which the record indicates to have been a misdemeanor.

responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered."

332 U.S. at 723–724, 68 S.Ct. at 323 (footnote omitted). This language has been construed in varying ways by different courts of appeals. At least one Circuit has adopted it as a controlling formulation for testing the competency of a waiver. Cranford v. Rodriguez, 373 F.2d 22 (10th Cir. 1967); Shawan v. Cox, 350 F.2d 909 (10th Cir. 1965). Other Circuits, however, have relied primarily upon the more general test posed by *Zerbst*, and in large part they have not approached the question in terms of the accused's "apprehension" of specific items. See, *e. g.*, Meadows v. Maxwell, 371 F.2d 664 (6th Cir. 1967). For discussions of the various positions, see Minor v. United States, 375 F.2d 170, 174–179 (8th Cir. 1967) (dissenting opinion); Spanbauer v. Burke, 374 F.2d 67 (7th Cir. 1966).

We believe that something more must be required of a trial court than a simple conclusionary inquiry as to the competency of a waiver. It cannot be doubted that the Supreme Court has made it abundantly clear that the assistance of counsel is of crucial, fundamental importance in the orderly achievement of the true aim of justice. This consideration leads us to conclude that, before the trial judge accepts a waiver of counsel and proceeds with the accused representing himself, he must take steps similar to those which he would take before accepting a plea of guilty.[5] This would require the trial judge, with a "fitting and appropriate * * * record," to establish that a reasonable effort has been made to assure that the accused is adequately informed of the risks involved in the surrender of his rights. None, however intelligent, can understand the nature and effect of such a waiver unless he understands the nature of the charge and the punishments that may be exacted. Moreover, insofar as it may be practicable to do so, by the appointment of counsel for a limited purpose or otherwise, the court must satisfy itself that the accused, in order to appreciate the risk, possesses reasonable understanding of the bare elements of the offense and choices of pleas and defenses which might be available. See Sessions v. Wilson, 372 F.2d 366 (9th Cir. 1966). Of course, trial judges are not required to attempt to educate accused persons as to all the intricate aspects of applicable criminal law. Nor, most assuredly, is it intended that a trial court, in order to acquire information as to "possible defenses," should by inquiry of the accused rather than his attorney, risk infringement on the accused's constitutional right against self-incrimination. At the same time, however, the more apparent the stupidity which attends one's insistence upon providing his own juice in which to stew, the more careful should be the trial judge

---

5. See Heiden v. United States, 353 F.2d 53 (9th Cir. 1955); Munich v. United States, 337 F.2d 356 (9th Cir. 1964). This is not to say, of course, that the same identical steps are required in these two problem areas, each of which has its own relevant considerations. The problems are often seen together, as when a defendant undertakes to waive counsel and plead guilty, both at the same time. This occurred in *Von Moltke*, although it is clear that the language of Mr. Justice Black was addressed to the waiver of counsel issue, rather than to the question of what is required prior to acceptance by the trial court of a guilty plea. See 332 U.S. at 720–721, 723–724, 727, 68 S.Ct. 316. We will not take the position that there should be less safeguards to the crucial rights of one insisting upon his innocence than to the rights of one who seeks to confess a crime by a plea of guilty.

in the required explanation of the factors involved in the attempted waiver.

In our footnote 2, *supra,* we have seen the whole advice communicated to the appellant by the first of the judges to whom the matter was presented. The second judge, at the beginning of the trial, merely indicated, without further inquiry, that an effective, final waiver had already been accomplished.[6] The record is otherwise devoid of detailed admonitions or satisfactory precautionary inquiry which would support belief that the appellant was sufficiently knowledgeable of his fundamental right and of the gravity of the risk that he would encounter by its waiver.[7] It is true that both judges indicated to appellant their belief that his waiver of the right to counsel was a mistake. We have reluctantly concluded, however, that the record does not disclose a sufficiently "penetrating and comprehensive examination" as to whether the defendant's professed waiver was an intelligent and understanding one. Nor, in our opinion, does it show that either of the judges did "investigate as long and as thoroughly as the circumstances of the case \* \* \* demand[ed]."

Without doubt, both of the able trial judges who were concerned in the proceedings below believed that the appellant's choice to represent himself was "intelligently" made, that the appellant [knew] what he [was] doing," and that "his choice [was] made with eyes open." At the same time however, their conclusion was not "clearly determined," except as may be gathered by inference, and the determination is not so sufficiently supported "upon the record" as, in the Supreme Court's language, "would be fitting and appropriate."

Reversed and remanded for new trial.[8]

See also People v. Cummings, 225 Cal. App.2d 341, 62 Cal.Rptr. 859 (Dist.Ct. App.1967).

I am authorized to say that Judge HUFSTEDLER concurs in my dissenting opinion.

BROWNING, Circuit Judge, would vacate the judgment and remand for resentencing "for the reasons stated in Judge ELY's dissenting opinion."

6. The second judge commented, merely:
 "One thing more before you leave. I am not going to lead you by the hand, here—I am not going to try the case. You were given a chance to have a lawyer. You are going to have a lawyer to talk to. If you get in trouble, you are going to have to bail yourself out. I can't be your lawyer and the judge, too."

7. Trial court inquiry might have established that appellant acquired the necessary degree of competency through advice given by counsel appointed at the time of arraignment. Concerning this, the record is silent.

8. In his dissenting opinion, ably expounding views to which the majority has given careful consideration, Judge Merrill quotes from a significant opinion which he himself authored. Heiden v. United States, 353 F.2d 53 (9th Cir. 1965). In turn, the majority would emphasize another authoritative expression from the same opinion. It is as follows:
 "It is contemplated by \* \* \* [Rule 11], and is the holding in *Johnson v. Zerbst,* that the fact that a plea was intelligently entered and that counsel was intelligently waived must be ascertained at the time of arraignment or of waiver and not after the fact. When this is done the facts can be made to appear of record; the understanding of the defendant can actually be accomplished and its accomplishment demonstrated beyond dispute. When the ascertainment is subsequently made after disputes have arisen, a degree of uncertainty is bound to creep in since, in the resolution of disputed facts, problems of credibility and of reliability of memory cannot be avoided."
 353 F.2d at 55. It is true that in *Heiden* our court was concerned with a problem arising from the violation of Rule 11, Federal Rules of Criminal Procedure. The Rule pertains to the acceptance of pleas of guilty. The majority cannot agree that one should gain more significant rights where there has been the violation of a Rule than where the infringed rights are those guaranteed by the Constitution of the United States. The same considerations should be applicable in both situations; therefore, under the reasoning of *Heiden,* a new trial is required.